GORDON CAN COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51845.   Promulgated October 31, 1933.

*Edgar M. Morsman, Jr., Esq.*, for the petitioner.
*P. M. Clark, Esq.*, for the respondent.

OPINION.

MATTHEWS: This is a proceeding for the redetermination of a deficiency in income tax for the year 1928 in the sum of $4,458.75. It is alleged by the petitioner that the respondent erroneously added to the petitioner's reported income for the taxable year the sum of $37,367.98, representing commissions paid to the Wallace Realty Co. by C. S. Davis & Co. under the circumstances which will be hereinafter set out.

Petitioner is a corporation, organized under the laws of the State of Nebraska, with its principal place of business in Omaha, Nebraska. It is engaged in the business of manufacturing and selling tin cans.

During the taxable year the entire common stock of the petitioner corporation was owned by its president, A. W. Gordon, and his wife, Almyra B. Gordon, in the respective amounts of 790 and 200 shares. There were outstanding 667 shares of preferred stock, all of which were owned by Mrs. Gordon with the exception of 12 shares; this preferred stock was being retired and 100 shares belonging to Mrs. Gordon were retired during the taxable year.

Petitioner's business was extremely profitable. A. W. Gordon, as president of the corporation, handled the large contracts and had exclusive control of the buying of the tin plate used in the manufacture of the cans. His nephew, S. R. Gordon, as secretary-treasurer, attended to the manufacturing end and the routine work. A. W. Gordon was a close personal friend of C. S. Davis of the firm of C. S. Davis & Co., which will be hereinafter referred to as the Davis Co., from whom the petitioner purchased tin plate. Because of this friendship A. W. Gordon received concessions which would not have

been otherwise obtainable. He was always given first-hand information as to purchases by large consumers who had tin plate made to order by exact measurement and was given the opportunity to procure at very advantageous prices the surpluses or "spots" left on hand with the Davis Co. after filling these orders. By purchasing these spots from the Davis Co. at a price considerably below the prevailing market price for tin plate, petitioner was enabled to make large profits.

The Revenue Act of 1924 contained a provision making income tax returns open to the public. Petitioner had three large customers, located in Omaha, and it was believed that if they knew the amount of the petitioner's profits they would insist upon a reduction of the prices paid by them for the tin cans manufactured by the petitioner. Accordingly, after the enactment of the Revenue Act of 1924, the Wallace Realty Co. was organized by A. W. Gordon and his associates, with A. W. Gordon as president, for the purpose of holding a certain building which was owned by the petitioner and to receive the profits attributable to the advantageous position occupied by A. W. Gordon on account of his friendship with C. S. Davis, which profits had previously been received and reported as income by the petitioner. These profits were termed commissions upon purchases of tin plate made for the petitioner and were received by the Wallace Realty Co. from the Davis Co. Payment for its tin plate was made by the petitioner to the Davis Co. and the latter company then rebated to the Wallace Realty Co. the difference between the price at which the tin plate was billed to the petitioner, which was approximately the market price, and the lower price at which the Davis Co. was willing to furnish the tin plate to the petitioner. The Davis Co. consented to this arrangement and made these rebates to the Wallace Realty Co. at the direction of the petitioner corporation. Prior to the organization of the Wallace Realty Co. petitioner had purchased its tin plate direct from the Davis Co. at the lower price without the payment of any commission or rebate by the Davis Co. All purchases of tin plate were made or authorized by A. W. Gordon personally, by mail or over the telephone. A. W. Gordon drew no salary from the Wallace Realty Co.; he received an annual salary of $36,000 as president of the petitioner corporation. During the taxable year 5 shares of stock of the Wallace Realty Co. stood in the name of A. W. Gordon and the balance of 95 shares of stock stood in the name of his wife.

At intervals between 1924 and the taxable year, in accordance with its instructions, petitioner's purchases of tin plate were handled direct from the Davis Co. without being billed through the Wallace Realty Co. Under date of February 27, 1926, which was the day

following the date of enactment of the Revenue Act of 1926, which act repealed certain provisions of the Revenue Act of 1924, including the provision with respect to making income tax returns open to the public, the petitioner corporation addressed the Davis Co. as follows:

We wish to advise you that from now on we will appreciate very much if you will bill tinplate to the Gordon Can Company in the regular way as you used to do. We appreciate the trouble that you were put to in order to figure our commissions but the emergency which caused us to do this has now been repealed, so from now on you may bill the tinplate to us the regular way. We want you to know that we appreciated your cooperation with us.

These instructions were countermanded under date of November 15, 1926, when the Davis Co. was advised by the petitioner to bill the cars of tin plate " on the same basis that you billed them a year ago, sending the commission check to the Wallace Realty Company."

The commissions or rebates paid to the Wallace Realty Co. by the Davis Co. amounted to $37,367.98 for the taxable year 1928. The Wallace Realty Co. included this amount in its income tax return for 1928.

In determining the deficiency herein complained of the respondent included in the petitioner's income these commissions in the sum of $37,367.98 and explained this adjustment as follows:

Tin plate purchased from C. S. Davis and Company was billed to your corporation at a price in excess of actual prices and the difference between the billed price and actual price was refunded to the Wallace Realty Company in the guise of commissions. It is therefore held that this is merely a diversion of profits and is restored to income by reducing purchases to actual cost through elimination of excess cost transferred to the Wallace Realty Company.

It is not disputed that payment of commissions to the Wallace Realty Co. was made by the Davis Co. in accordance with instructions from the petitioner and that the Wallace Realty Co. furnished no goods and performed no services for the Davis Co. The petitioner is contending that the tin plate used by it was purchased from the Davis Co. by A. W. Gordon as president of the Wallace Realty Co. and urges that Gordon had the right to take the commissions personally or to give them to the Wallace Realty Co. or to give them to the petitioner corporation. As stated in the brief filed by counsel for the petitioner, "A. W. Gordon decided that this personal drag of his with Davis & Company should inure to the benefit of the Wallace Realty Company and not to the benefit of the Gordon Can Company," and for this reason petitioner insists that it is not taxable upon the amount of the commissions.

The petitioner's contention cannot be sustained. The record clearly shows that the commissions in question were paid to the Wallace Realty Co. not because they were earned in any way by that corporation but because the petitioner was desirous of preventing its cus-

tomers from knowing how much profit it was making on the manufacture of tin cans, and this method of billing petitioner's purchases of tin plate would result in a reduction of the profits which it would have to report. A. W. Gordon and his wife owned all of the common stock of both the petitioner and the Wallace Realty Co. It was through Gordon's personal efforts and on account of his friendship with C. S. Davis that the tin plate used in the manufacture of its tin cans was obtained by the petitioner at such a low figure. As president of the petitioner corporation Gordon would be expected to so manage its affairs that its best interests would be protected. Certainly he would not undertake to benefit personally by receiving from the Davis Co. commissions on orders placed by him for the petitioner corporation. Had there been other stockholders in the petitioner corporation who did not own stock in the Wallace Realty Co. they undoubtedly would have objected to the latter corporation's receiving such commissions. In effect the commissions were paid by the petitioner to the Wallace Realty Co. for no other purpose than to reduce petitioner's profits. The fact that the Wallace Realty Co. reported these sums as income does not change the liability of the petitioner.

While respondent does not base his action upon the provisions of section 45 of the Revenue Act of 1928, it may be assumed that the adjustment was made in order that the real income of the petitioner might be clearly reflected. This section reads as follows:

SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such trades or businesses.

We hold that under the circumstances outlined above the respondent did not err in adding to the petitioner's income for 1928 the sum of $37,367.98.

*Judgment will be entered under Rule 50.*