CONSUMERS CONST. CO. v. COMMISSIONER OF INTERNAL REVENUE.
No. 3269.

Circuit Court of Appeals, First Circuit.
Feb. 15, 1938.

Bernhard Knollenberg, of New York City (Charles M. Trammell, of Washington, D. C., and Bradford S. Magill and Francis J. Sweeney, both of New York City, on the brief), for petitioner for review.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for the Commissioner.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a petition for review of a decision and order of the Board of Tax Appeals determining a deficiency in the income tax of the petitioner for the period from August 1, 1927, to December 31, 1927.

There was originally before the Commissioner the assessment of the tax of the petitioner, not only for the period covered in this appeal, but also for the periods from March 30, 1927, to December 31, 1927, and from January 1, 1928, to October 31, 1928, as well as the taxes for the same periods to be assessed on several affiliated corporations and trusts. The petitioner's appeal from the Board's decision affirming the findings of the Commissioner for the period from August 1, 1927, to December 31, 1927, raises the only questions which are before this court in these proceedings.

To state in detail all the interrelations of the several corporations and trusts forming the set-up of the system of which the petitioner was a part would only serve to confuse the issue here involved, which is, whether the net income received by the petitioner from the operating companies during the period from August 1, 1927, to December 31, 1927, was taxable to the petitioner, or whether the petitioner acted merely as the agent of the two companies holding its common stock, or as a conduit through which the receipts from operating companies were passed on to the holding companies and should be taxed to them.

So far as this appeal is concerned, it is sufficient to state the following facts: The petitioner was organized as a corporation on March 30, 1927. All of its common stock was issued to holding companies in the proportion of five per cent. to the New England Gas & Electric Association, a Massachusetts trust, which controlled through stock ownership certain subsidiary corporations furnishing gas and electricity to the public, and 95 per cent. to the Associated Gas & Electric Company, which controlled a larger number of subsidiary companies, of which there were a total of over 163 in the system and which are hereafter referred to as operating companies. In consideration of the issue of its common stock to the New England Gas & Electric Association and to the Associated Gas & Electric Company, it received from these companies certain construction contracts with the operating companies under which the petitioner was to supervise the construction activities of the operating companies, and was to receive for such supervision 7½

per cent. of the total cost of any construction work undertaken by the operating companies. During the period covered in this appeal the petitioner had no employees, and employed the J. G. White Management Corporation to do the work of construction, for which the petitioner paid it a stated sum.

The petitioner also issued a large amount of preferred stock which was held by the Eastern Utilities Investing Corporation, an investment trust, though for what consideration does not appear. 14,500 shares of the 7 per cent. preferred stock of the Eastern Utilities Investing Corporation was sold and transferred to the New England Gas & Electric Association, and practically all the remainder of the preferred stock of the Eastern Utilities Investing Corporation, except such as was sold to the public, was held by the Associated Gas & Electric Company.

After operating under this arrangement, it was found that the subsidiaries of the New England Gas & Electric Association contributed 10 per cent. of the construction fees, and the operating subsidiaries of the Associated Gas & Electric Company contributed 90 per cent. of the construction fees. To readjust the stock holdings of these companies to correspond to the contributions of its subsidiaries to the petitioner under its construction contracts, 10 per cent. of the common stock of the petitioner was transferred to the New England Gas & Electric Association, leaving 90 per cent. in the hands of the Associated Gas & Electric Corporation. Apparently this readjustment of the stock holdings of the holding companies took place on or about August 1, 1927, as, prior to that date, the petitioner was clearly affiliated with the Associated Gas & Electric Company, which held 95 per cent. of its common stock.

Before the Commissioner, and in its petition to the Board of Tax Appeals for redetermination of its tax, the petitioner based its claim for a redetermination in part on the ground that it was affiliated with certain other corporations, and in part on the ground that it should be permitted to file a consolidated return under section 240(f) of the Revenue Act of 1926 with certain other taxpayers who were also asking for a redetermination of their taxes for the year 1927. In its petition to this court, however, it claims that during the period in question it was

a mere conduit between the operating companies and the holding companies for conducting the income received from the many operating companies under its construction contracts with them to the holding companies, or that it was an agent of the holding companies for the collection and distribution of the moneys it received from the operating companies to its principals.

From March 31 to August 1, 1927, the petitioner was clearly affiliated with the Associated Gas & Electric Company, which owned 95 per cent. of its common stock. After August 1, 1927, when the ratio of the petitioner's common stock owned by the Associated Gas & Electric Company and the New England Gas & Electric Association was changed from 95 per cent. and 5 per cent. to 90 per cent. and 10 per cent., the petitioner was no longer affiliated with any other corporation. Its right to file a consolidated return after August 1, 1927, under section 240(f) of the Revenue Act of 1926, 44 Stat. 46, was also refused by the Commissioner, and the ruling of the Commissioner on this point was accepted by the petitioner before the Board of Tax Appeals.

The petitioner could not, we think, claim to be affiliated with another corporation from March 30 to August 1, 1927, and then claim to be a mere agent of the affiliated corporation from August 1 to December 31, 1927. If its status as an affiliated corporation from March 31, 1927, to August 1, 1927, is once conceded, its status as an independent corporation after August 1 continues.

It may be significant, too, that the petitioner did not appeal from so much of the Board's decision as related to its tax for the period from January 1, 1928, to October 31, 1928, inasmuch as for a part of that period the petitioner had employees and apparently conducted the construction work for the subsidiaries, which the J. G. White Management Corporation had previously done.

As further evidence of its functioning as an independent corporation and that it was not a mere agent of the holding companies or a conduit for transferring to the holding companies the income received under its construction contracts with the operating companies, it appears that, after paying the stipend of the J. G. White Management Corporation and its ordinary expenses, it declared first from its receipts from its construction contracts dividends

on the preferred stock held by the Eastern, Utilities Investing Corporation, and then from the remainder of its receipts dividends on its common stock held by the holding companies. This is significant, since the New England Gas & Electric Association and the Associated Gas & Electric Company held only a part of the preferred stock of the Eastern Utilities Investing Corporation, while the remainder was held by the public. It is, therefore, clear that not all of the earnings or receipts of the petitioner from its construction contracts found their way into the hands of the holding companies, but a part, at least, came, or might come, into the hands of the investing public through dividends on the preferred stock of the Eastern Utilities Investing Corporation. It is clear, we think, the corporate entity of the petitioner must be kept up in order for the Eastern Utilities Investing Corporation and its stockholders to receive such part of the earnings of the petitioner as they were entitled to.

■ The petitioner lays stress on an admission in the answer of the Commissioner that the petitioner "was engaged in the business of serving as a corporation control and convenience." While the answer of the Commissioner admits the allegations of the paragraph in which the statement appears, it is far from being a categorical admission that the petitioner was the agent of the holding companies, or served as a conduit for the transfer of construction service funds from the operating companies to the holding companies. It is not clear at all what it was intended to allege by the statement above referred to. To serve as a "corporate control," the natural inference is that the petitioner's business was to control something, which it did not do. Such an allegation is too vague and indefinite to bind the Commissioner to any form of doing business, and the other paragraphs denied in the Commissioner's answer clearly indicate, we think, that he had no intent to admit that the petitioner was acting as agent of the holding companies. It is not necessary to comment on the petitioner's brief in which it is stated that "corporate control and convenience" was the sole business of the petitioner.

Stress is also laid on the stock control of the holding companies over the petitioner, but it does not appear that, during the period involved here, the holding companies controlled, or could have controlled, the declaration of dividends on the preferred stock of the petitioner. They were the first to be recognized in distributing the earnings of the petitioner, and the investing public was entitled to have the Eastern Utilities Investing Company receive its share of the dividends on the preferred stock of the petitioner as against common stock holdings of the holding companies.

■ It is the general rule that a corporate entity must be observed unless unusual conditions exist which require the courts to look behind the form to the substance.

It cannot be said, we think, that the petitioner did not serve a business purpose; and, as the Board said in Broadway Strand Theatre Co. v. Commissioner, 12 B.T.A. 1052: "Where a corporate cloak is resorted to for its business benefits, the burdens, if any, must also be assumed."

■ The cases in which the line is drawn between a corporate entity, which must be observed, and one in which corporate form may be disregarded and the rule of constructive receipts be applied, may be more or less shadowy. Only in cases where there are exceptional circumstances may the separate entity of the corporation be disregarded and the courts look through form to the substance. Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Nixon v. Lucas, 2 Cir., 42 F.2d 833, 834; McDonald et al. v. Commissioner, 4 Cir., 52 F.2d 920, 922.

It is not surprising, therefore, that charges of inconsistency, on the part of the Commissioner or the Board in determining upon this finely drawn line arise. No hard and fast rule can be laid down for drawing this line in every case. The determination of the Board in a given case must stand if there is substantial evidence to support its finding.

The petitioner cites Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Gulf Oil Corporation v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; Rensselaer & S. R. Co. v. Irwin, 2 Cir., 239 F. 739; West End Street Railway Co. v. Malley, 1 Cir., 246 F. 625; Gold & Stock Telegraph Co. v. Commissioner, 2 Cir., 83 F.2d 465. But these cases and other similar cases cited by the petitioner all provided for the lessee, or a subsidiary company, to pay rentals directly to the

stockholders of the lessor or a parent company. This the court held was, in effect, a payment to the lessor or the parent company itself, which was trustee for the benefit of its stockholders, and are in no way controlling as to this petitioner, which maintained separate books of account, carried on business as any independent corporation would. The other cases cited by the petitioner are not in point.

In the Gordon Can Company v. Com'r Case, 29 B.T.A. 272, Helvering v. Gordon, 8 Cir., 87 F.2d 663, on which the petitioner relies, Gordon and his wife owned all the stock of the Gordon Can Company. They also owned all the stock of a Realty Company. Gordon arranged to buy tin plate of a corporation engaged in supplying this article and at a price considerably below the regular market price. He arranged with an official of this corporation supplying the tin plate who was a personal and close friend to bill the plate to the Gordon Can Company at the regular market price and to give a rebate agreed upon which was paid to the Realty Company without any obligation, contractual or otherwise, to do so, which company had nothing to do with making or selling cans. The court very properly held that the Realty Company was a mere conduit in that case to transfer the rebate through it to the stockholders of the Can Company. The petitioner undertakes to draw an analogy between the parties in that case and this, but the part performed by the Realty Company in that case is in no way analogous to that performed by the petitioner in this case. The Realty Company performed no service at all except as a conduit to transfer the funds represented by the rebates to the stockholders of the Can Company. It does not appear to have had any contractual relations with the corporation giving the rebates. On the other hand, the petitioner, which it is claimed corresponds to the Realty Company in that case, performs a very important service directly connected with the collection of the funds under its construction contracts and their distribution as dividends among the stockholders holding its stock, some part of which finds its way into the hands of the public through preferred dividends by the Eastern Utilities Investing Corporation.

In the case of Ford Motor Co. v. United States, Ct.Cl., 9 F.Supp. 590, 599, the government referred to the cases of Southern Pacific Co. v. Lowe, supra, and Gulf Oil Corporation v. Lewellyn, supra, but the court, in holding they did not apply to the facts before it, said:

"We have carefully considered the decisions of the Supreme Court cited by the defendant in support of the contention that the separate corporate entities of the corporations involved should be disregarded and the case treated as that of a single taxpayer. The facts in each of the cases relied upon are, we think, clearly distinguished from the facts in the instant case. * * *

"The essence of the decisions in the cases referred to is that, where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose of controlling the corporation and dominating its management and affairs so that it may be used as a mere agency, tool, or instrumentality of the owning corporation or corporations, the courts will disregard the fiction of the separate corporate entity and deal with the substance of the transactions in such manner as the justice of the case may require. * * *

"In each of the cases cited, the company, whose separate corporate entity was disregarded by the court, was a subsidiary corporation, the entire property and assets of which were owned by one or more other corporations which completely dominated its affairs and exercised control over the management of its business to such an extent that the companies were in substance but one corporation."

This case obviously is not authority in support of the petitioner's contention in the case at bar.

■ The holding companies in this case did not have in their possession any of the property of the petitioner, nor does the record show that they undertook to dominate its corporate dealings. So far as the record shows, they permitted it to act throughout as an independent corporate entity. The construction contracts with the operating companies transferred to the petitioner in return for the issue of its stock must be held to be capital assets and the earnings under them constituted income.

It is not denied that the petitioner was corporate in form; that it kept separate books of account; that it had all the officers common to corporations; that they perform-

736

ed their usual functions in the collection of the construction contract fees, the expending of the moneys, in meeting any obligations they were under, and in the declaration of dividends.

The Board found the petitioner was not an example of an agency passing along benefits to its principal, that it was not a mere bookkeeping entity or a corporation without substance, or an agent or conduit for holding companies. We think its findings are supported by some substantial evidence and cannot be disturbed on appeal.

The decision and order of the Board of Tax Appeals are affirmed.