GENEVIEVE TOWNSEND v. MILACA MOTOR COMPANY
AND OTHERS.
SAME v. O. J. ODEGARD AND ANOTHER.[1]

May 3, 1935.

Nos. 30,358, 30,359.

*E. L. McMillan,* for appellants Milaca Motor Company, The Agency, Hagman Hardware Company, and S. S. Petterson.

[1]Reported in 260 N. W. 525.

*Fowler, Carlson, Furber & Johnson,* for appellants O. J. and Edwin Odegard.

*Cobb, Hoke, Benson, Krause & Faegre,* for respondent.

JULIUS J. OLSON, JUSTICE.

Two appeals are involved. In the first the appealing defendants are Milaca Motor Company, The Agency, Hagman Hardware Company, and S. S. Petterson; in the second, O. J. and Edwin Odegard. The two groups separately appeal and are represented by different counsel, but the appeals have been submitted and argued together. Both appeals are from orders of the trial court overruling the separate demurrers interposed. The trial court in each order certified that the questions presented are important and doubtful. The demurrer interposed by the first group is based upon "the ground that the facts stated in said complaint do not constitute a cause of action." As to the second group, the grounds are stated to be: (1) "That the plaintiff has not legal capacity to sue"; (2) "that several causes of action are improperly united"; and (3) "that the facts stated do not constitute a cause of action against them or either of them." The second ground is abandoned in their brief. The several assignments of error raised may therefore be considered and disposed of thus: (1) Does the complaint state a cause of action against defendants or any of them? (2) Is plaintiff without legal capacity to sue, *i. e.,* to maintain this form of suit? The solution of these questions requires a rather complete statement of the allegations of the complaint.

Milaca Motor Company is a domestic corporation. The Agency was organized under the laws of this state, but its corporate existence expired by limitation May 6, 1931, and nothing has since been done to extend its corporate life. Hagman Hardware Company is also a domestic corporation. On June 2, 1930, due authority having been obtained, the motor company executed and delivered to The Agency by deed of warranty certain real estate. In addition thereto, it executed and delivered to The Agency 30 "First Mortgage Gold Bonds" each in the amount of $500 maturing June 1, 1935, with appropriate interest coupons attached, the interest rate being

at six per centum, payable semi-annually. The deed was duly recorded. At the same time and as part of the same transaction The Agency executed to the motor company a defeasance contract under the terms of which it agreed to reconvey to the motor company the real estate conveyed by the aforementioned deed. The defeasance contract prescribed certain terms and conditions that must be met and complied with by the motor company before a reconveyance may be had. These may be summarized thus:

The motor company promised to make the payment of principal and interest to The Agency in conformity with the provisions of the bonds and coupons hereinbefore mentioned. It was to keep the property insured in the sum of at least $15,000 against loss by fire or tornado in such form of policies and in such company or companies as The Agency should direct. The insurance policies were to contain subrogation clauses satisfactory to The Agency; and any sums payable thereunder, in event of loss, should be paid to The Agency to the amount and extent of its interest in the conveyed premises. The motor company was promptly and punctually to pay all taxes upon the granted premises as and when the same became due. In event the motor company should default in any of the conditions, covenants, or agreements in the defeasance contract mentioned and if such default should continue for a period of 60 days, then The Agency was authorized, without notice, to declare the whole sum secured by the conveyance immediately due and payable. It was further provided that the motor company should maintain and keep the premises in good repair; that in the event it failed in that regard The Agency was authorized to make such repairs. It was also authorized to pay the taxes, assessments, and other charges and to have such items made an additional charge against the motor company and was to have an additional lien therefor under its contract. The Agency was also authorized to effect insurance, in fact to do any act deemed necessary by it for the protection and preservation of the security. There is a further provision to the effect that The Agency would, upon the written request of the holders of 35 per cent of the outstanding principal in-

debtedness ($15,000 gold bonds mentioned) secured by these instruments, proceed "with all reasonable speed" to foreclose the granted premises; "and it is hereby expressly agreed and made binding upon each and every holder of the bonds secured hereby that no proceedings at law or in equity shall be taken by any bondholder to foreclose hereunder, or to secure a sale of the property described herein, independently of the said Vendor, except after requisition shall have been made to said Vendor in manner and form herein provided, and also until a refusal of the said Vendor to comply with such requisition according to the provisions herein made in respect thereto."

"It is further covenanted and agreed by the said Vendee that in case the Vendor shall for any reason omit to avail itself of any default as aforesaid, such omission shall not prejudice or impair the rights or remedies of such Vendor to avail itself of any other or further neglect or default of the said Vendee; and that the remedies herein specified in case of default shall not exclude the said Vendor, if it shall so elect, from any other legal or equitable remedy it may be entitled to in the premises, but all remedies herein provided shall be construed as cumulative only." (The vendor is The Agency, and the vendee is the motor company.) In event of foreclosure, attorney's fees and other costs in that behalf were to be charged against the property conveyed and the promisor, the motor company. Each bond also contained an acceleration clause in substance, purpose, and effect the same as the acceleration clause contained in the so-called defeasance agreement.

As a part of the same transaction there was also executed to The Agency an agreement signed by Hagman Hardware Company and the individual defendants, S. S. Petterson, O. J. Odegard, and Edwin Odegard, reciting the issuance and delivery of the bonds and coupons and the other instruments hereinbefore referred to and reading as follows:

"Now, therefore, for the purpose of additional security of the payment of the said bonds and coupons, and giving additional credit thereto, the undersigned, in consideration of the premises and

for value received, do hereby jointly and severally guarantee the prompt payment of principal and interest of each and all of the said bonds and coupons, in accordance with the tenor thereof."

In addition to the allegations hereinbefore set forth, the complaint alleges that the property covered by the mortgage has been improved by the erection of a modern brick garage; that the building is producing income substantially in excess of the operating expense thereof; that the defendant motor company has defaulted in respect of payment of interest coupons falling due June 1, 1933, and June 1, 1934, and that such default continues; that it has also failed and neglected to pay taxes for the years 1931 and 1932 and that these, with accumulated penalties and interest as of the date of the commencement of the action amounted to $1,870.47; further, that the motor company has failed to keep the premises adequately insured against loss by fire or tornado. It is further alleged that the motor company is substantially owned and controlled by the defendants Hagman Hardware Company, S. S. Petterson, O. J. Odegard, and Edwin Odegard; that the corporate stock of the defendant The Agency is owned and controlled substantially by the defendant S. S. Petterson; and that the principal officers and stockholders of the motor company are the same persons and corporate entities as those of The Agency. The motor company is insolvent, and the property involved in the trust instruments is the only asset having any value now owned by that company; that The Agency has failed and neglected to do anything in respect of correcting the evils complained of and has utterly failed and neglected to do anything in respect of the protection and preservation of the rights of the bondholders and that it has failed in its duties as trustee and holder of these trust instruments intended and executed for the use, security, and protection of the bondholders; that the plaintiff is the owner and holder of 12 of the bonds issued and secured by the trust arrangement; that plaintiff has requested information from The Agency for the names and addresses of the other bondholders but has been refused any information in that regard. Because of the interlocking interests of the several defendants, the rights of the

428

bondholders are neglected, ignored, and disregarded. The prayer for relief is that the property be foreclosed, that a receiver be appointed to take charge of the same for the best interests of the bondholding creditors, for sale of the mortgaged premises, and for personal judgment against all defendants except The Agency for any deficiency, with costs.

The basis for defendants' claim that the complaint does not state a cause of action is that the trust arrangement is exclusive with regard to the manner of procedure by a bondholder to enforce his claim. They assert that The Agency is in fact an existing entity; that plaintiff is estopped from denying this because the suit was brought and appearance made by it as a corporate enterprise; further, that plaintiff has dealt with it in its corporate capacity and cannot now deny that it is in fact such; that in any event it is a *de facto* corporation and remains such until proceedings are brought to have its corporate affairs wound up. If we were to assume the accuracy of everything that is claimed in this regard, the fact nevertheless remains that the trustee has utterly failed to do anything in respect of its duty to protect, preserve, and enforce the claims of the bondholders, its beneficiaries under the trust. If it is in fact a living concern, it is not functioning as such. It is wholly dormant. Its effectiveness is gone. For the purposes of the trust, it no longer exists. Inaction has taken the place of action. Whether it be dead or alive in the eyes of the law is unimportant here because in fact it is and has been doing nothing in furtherance of its trust. If it has any legal vitality, its effectiveness is obviously under the control and management of the other defendants, whose interests are opposed to the claims and interests of the bondholders. Under such circumstances a court of equity will look to the substance and will not be deterred by obscure shadows or fictitious obstructions from exercising its functions to grant relief. We believe the rule stated in 7 Fletcher, Cyclopedia Corporations (Perm. ed.) § 3153, is applicable.

"A bondholder, usually by derivative action, may sue to foreclose the mortgage if the trustee fails or refuses to do so, *or if for any*

*reason the trustee has rendered himself unfit to proceed."* (Italics ours.)

Courts ordinarily deal only with the bondholders through the trustee appointed and acting in that capacity. This is so because this method facilitates the conduct of the suit and is conducive to orderly and adequate procedure. But such procedure "must give way whenever the trustee occupies a position prejudicial to the interests of the bondholders." *Id.* § 3155. That is the situation here. Obviously demand upon the trustee to proceed would be a futile gesture and wholly unproductive of results. Its interests, because of the personnel of those having it in hand, are hostile to those of the bondholding creditors. It is therefore but natural to find it opposing the enforcement of their claims. If it was desirous of aiding them, as it was in duty bound to do, its present attitude would not be obstructive. The following cases have an interesting bearing upon this question. Manor Coal Co. v. Beckman, 151 Md. 102, 133 A. 893; Webb v. Vermont Cent. R. Co. (C. C.) 9 F. 793; Clay v. Selah Valley Irrigation Co. 14 Wash. 543, 45 P. 141; American T. & I. Co. v. Kentucky Southern O. & G. Co. (C. C.) 51 F. 826; Cochran v. Pittsburg S. & N. R. Co. (C. C.) 150 F. 682. It may well be doubted that the corporate existence of The Agency continues. By the statute authorizing its creation it has ceased to exist. Under these circumstances the decisions generally hold that the corporation is dissolved *ipso facto.* See 14 C. J. p. 226, § 232, and cases cited under the notes. Nor do we believe that it can be said to be a corporation *de facto.* The requirements in such cases are well set forth in Mabel First Lutheran Church v. Cadwallader, 172 Minn. 471, 476, 215 N. W. 845; 8 Fletcher,.Cyclopedia Corporations (Perm. ed.) § 3842. Many other cases bearing upon this question are easily available. Our own statutes, 2 Mason Minn. St. 1927, §§ 7455, *et seq.,* and 7485, 7486, point to the same result.

■ Only one further question requires discussion. May plaintiff prosecute this action, that is, has she legal capacity to sue? Obviously she possesses substantial and important rights. She is an assignee to the extent of $6,000 of the original mortgage loan of

430

$15,000. Under 2 Mason Minn. St. 1927, § 9165, she is a real party in interest. Defendants concede that in a proper case "an individual bondholder may sue in equity to foreclose" a trust deed if "the trustee is dead or incapacitated or actually  *  *  *  has refused to act, or there is fraud." The authorities so hold. 3 Jones, Mortgages (8 ed.) § 1771; Waughop v. Bartlett, 165 Ill. 124, 46 N. E. 197, 201; Armour v. Waxahachie Gas Co. (C. C. A.) 53 F. (2d) 979; Seibert v. M. & St. L. Ry. Co. 52 Minn. 148, 53 N. W. 1134, 20 L. R. A. 535, 38 A. S. R. 530. She has brought this suit in her own behalf and in behalf of all other bondholders. She is asking no special privileges or preference rights. Her attempt is to bring about a collection of her just claims, and in so doing she seeks to have the other bondholders similarly considered.

■ We are of opinion that an absolute guarantor may be joined as defendant in the same action with the principal obligor. 3 Jones, Mortgages (8 ed.) § 1821; Hammel v. Beardsley, 31 Minn. 314, 17 N. W. 858; Lucy v. Wilkins, 33 Minn. 21, 21 N. W. 849; First Nat. Bank v. Schirmer, 134 Minn. 387, 159 N. W. 800; Midland Nat. Bank v. Security Elev. Co. 161 Minn. 30, 200 N. W. 851; Singer v. Singer, 173 Minn. 57, 214 N. W. 778, 216 N. W. 789.

We are satisfied that the orders here under review are right and fully justified; hence both are affirmed.