# INTERSTATE TRANSIT LINES v. COMMISSIONER OF INTERNAL REVENUE.

## No. 12247.

Circuit Court of Appeals, Eighth Circuit.

July 31, 1942.

Rehearing Denied Sept. 8, 1942.

Nelson Trottman, of Chicago, Ill. (Henry W. Clark and Joseph F. Mann, both of New York City, on the brief), for petitioner.

Frederic G. Rita, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

In its income tax return for 1936, the petitioner, Interstate Transit Lines, claimed a deduction in the amount of $28,100.66 as a loss sustained by its wholly owned subsidiary, Union Pacific Stages of California, and absorbed by the petitioner under a contract. The Commissioner disallowed the deduction "for the reason that no provision of the Revenue Act of 1936 authorizes such a deduction" and assessed a deficiency in the amount of $4,461.53. The Board of Tax Appeals affirmed the determination of the Commissioner on the ground that the petitioner had not sustained the burden of establishing that the loss of the subsidiary was an ordinary and necessary expense of the parent corporation within the meaning of the applicable statute, § 23(a) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 827. (44 B.T.A. 957).

This statute provides that in computing net income there shall be allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

The taxpayer's petition to review presents the question of whether under the circumstances present the taxpayer, having pursuant to the obligation of a contract paid the operating deficit for 1936 of its subsidiary corporation, is entitled to a deduction on its income tax return therefor as an ordinary and necessary business expense. The inquiry calls for a brief review of the facts giving rise to the problem.

The petitioner is a corporation created under the laws of Nebraska with its principal office at the city of Omaha. Since 1929 it has operated interstate bus lines between Chicago, Illinois, and Los Angeles, California, for the transportation of passengers, mail and express. It had also acquired the right to handle intrastate business in the states of Iowa, Nebraska, Kansas, Colorado, Wyoming, Utah and Nevada.

Prior to 1937 the petitioner could not acquire the right to do intrastate business in California, because during the period from 1932 and continuing through 1936 the Public Utilities Act of California, Section 50¼, Deering's General Laws of California 1931, Act 6386, page 3561, provided that "No passenger stage corporation shall hereafter operate or cause to be operated any passenger stage over any public highway in this state without first having obtained from the railroad commission a certificate declaring that public convenience and necessity require such operation * * *.", and the railroad commission of California refused to grant certificates for intrastate operations to foreign corporations.

For the purpose of augmenting its income by means of additional revenues derived from carrying California intrastate traffic, the petitioner in 1930 organized under the laws of California the above named wholly owned subsidiary corporation, hereinafter called the subsidiary. Before 1932 the subsidiary had obtained the necessary certificate authorizing it to carry on the desired intrastate operations.

Having thus arranged to carry on both interstate and intrastate business in California, the subsidiary and the petitioner in

furtherance of the petitioner's purpose and plan entered into two contracts dated February 7 and 8, 1932, respectively. In the record the first contract is referred to as the Absorption Agreement and the second as the Operating Contract. The absorption agreement recited that all the capital stock of the subsidiary is owned by the petitioner; that the petitioner operates busses between various points but operates no busses in California; that the subsidiary operates busses in California; that the subsidiary is maintained as an operating subsidiary for the sole benefit of the petitioner, and that to secure such benefits it is necessary that the schedules of the two corporations be coordinated. The agreement then provided that the subsidiary agreed to operate busses upon such routes and schedules and under such rules and regulations as may be directed by the petitioner. There was a further stipulation that petitioner would reimburse subsidiary for any deficits incurred in its operations and that subsidiary would pay over to the petitioner any profits resulting from its operations, payments to be made at the end of each calendar year.

The operating contract recited that the petitioner had been operating a passenger business from points east through Las Vegas, Nevada, to Los Angeles, California, doing only an interstate business in the state of California; that the subsidiary contemplated engaging in intrastate operations in the latter state, and that the parties had arranged that the subsidiary would take over as successor all of petitioner's operations in California; that petitioner would terminate its operations at the California-Nevada state line and there connect with the lines of the subsidiary; and that for convenience and economy it was desirable that the busses of each party run through from its own territory into the territory of the other. It was agreed that as the busses of each party crossed the state line they would pass into the custody of the other party; that as one party took possession of the busses of the other under this arrangement the owner should be designated lessor and the other party lessee; that the lessee should pay the lessor five cents per mile for each mile the bus was operated while in lessee's possession; and that the expense of operation should be apportioned between the parties monthly, except that each party should pay the taxes on its own busses and that the lessee should be responsible to the

lessor for the busses while in the lessee's custody and possession.

There was no change in the conduct of the business after the parties began operating under the latter contract except that intra-California business was available on the busses when operating within that state. No additional expense was incurred other than the cost to the petitioner of keeping the separate accounts for the subsidiary. Both corporations had the same officers and directors. Both contracts were executed for each party by the same person as president of each company. The subsidiary had its own accounting records, employees, busses, directors, and corporate minute book. Its accounting records were kept at the offices of the petitioner by the employees who kept the petitioner's records. The petitioner collected all the revenues of the subsidiary and paid all of its bills. The subsidiary had no separate bank account. The revenues and expenses of both corporations were apportioned monthly on their respective books on the basis of passenger and traffic miles. Corresponding accounts, designated "cash accounts", showing the monthly apportionment, were kept on the books of each party. Likewise there was kept in the books of each party a "clearing account" for an entry at the end of each year showing the absorption by the petitioner of the profit or deficit for the year resulting from the operation of the subsidiary.

For the calendar year 1936 the subsidiary incurred an operating deficit of $28,100.66 as shown by its books. At the end of the year this amount was charged to the petitioner in the clearing account of the subsidiary and credited to the subsidiary in the clearing account of the petitioner.

At all times the accounts of both corporations were kept on an accrual basis.

The petitioner contends that in computing its 1936 income it is entitled to deduct as an ordinary and necessary expense the item of $28,100.66 representing the deficit of its California subsidiary for that year. Briefly the basis of this contention is (1) that the subsidiary was the agent of petitioner in carrying the interstate traffic in California, hence the total expense including the deficit was an ordinary and necessary expense of petitioner; (2) that the payment was made in performance of a contractual obligation; and (3) that because of the close integration of the two

corporations the subsidiary must be considered only an instrumentality or a department of the petitioner's business, on the principle that substance and not form should govern in order to achieve equal equity.

As a foundation for these contentions it is argued (1) that the total expenses allocable to carrying the interstate traffic in California would, with the exception of the cost of bookkeeping, have been the same as it was for carrying both the interstate and the intrastate traffic, and that equivalent expenses would have been borne by petitioner had the subsidiary not been organized and the absorption contract made; (2) that the deduction is not claimed merely because petitioner owned all the stock of the subsidiary; and (3) that the formal separate corporate entities should under the circumstances be disregarded.

The Board held that the petitioner failed to sustain the burden of establishing that the accrual was an ordinary and necessary expense of the petitioner for the reasons, in part, (1) that the subsidiary was a separate, juristic taxable entity, and that its business in California was not the business of the petitioner; (2) that there is no evidence of the ordinary and necessary expense of furnishing interstate transportation within the state of California, so that it cannot be determined whether all of the operating deficit of the subsidiary for the taxable year was attributable to the intrastate business of that company; and (3) that the subsidiary was not created nor the deficit made to increase the profits of the business of the petitioner. These things were done to augment the petitioner's income by increasing the income of its subsidiary from revenues derived from the intrastate business in which the petitioner could not engage. Under these circumstances the Board held that payment of the deficit by the petitioner was in the nature of a capital expenditure and not an expense of carrying on the petitioner's own business.

In determining whether the Board erred in holding that the petitioner failed to sustain the burden of establishing that the payment involved was an ordinary and necessary business expense of the petitioner, we must consider whether as a matter of law the evidence compels the conclusion that the payment was a business expense rather than a capital expenditure.

The petitioner's first two contentions are in effect parts of a single argument. Stated briefly, the substance of the contentions is that carrying interstate traffic in California was a part of the petitioner's business; that the petitioner employed the subsidiary as its agent to carry its interstate traffic in California, and that as part consideration for such service it agreed to pay the subsidiary's deficits, if any; and, therefore, the payment of the 1936 deficit was an ordinary and necessary contractual business expense. In this statement of the petitioner's contentions we accept the theory that the expense of carrying intra-California traffic may be disregarded as insignificant. Even so, the argument ignores the facts. Assuming that the subsidiary was an agent of the petitioner as a carrier of its interstate traffic in California, the absorption contract obligating the petitioner to pay the subsidiary's deficits does not place the obligation upon the ground of payment for any service rendered or to be rendered by the subsidiary. The amount of the deficit to be paid is not made dependent upon any corresponding unit of benefit to the petitioner or sacrifice of the subsidiary. In fact revenues of the respective companies were apportioned monthly "on the basis of passenger and traffic miles, compared to the aggregate of the same." The deficit of 1936 was consequently an incident attributable wholly to the business of the subsidiary. Standing alone the fact that payment was the result of a contractual obligation does not render it an ordinary business expense. Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416.

It is next argued that the close integration of the petitioner and of its subsidiary makes clear the fact that the subsidiary was but an agent or instrumentality of the petitioner; that the business of the subsidiary was but a department of the petitioner's business; and that, therefore, the corporate entity of the subsidiary should be disregarded for tax purposes. In support of this thesis reliance is placed upon such cases as Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Gulf Oil Corporation v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L. Ed. 133; North Jersey Title Insurance Co. v. Commissioner, 3 Cir., 84 F.2d 898; United States v. Brager Building & Land Corp., 4 Cir., 124 F.2d 349; and Inland Development Co. v. Commissioner, 10 Cir.,

120 F.2d 986. These cases cannot be regarded as laying down any general rule authorizing disregard of corporate entity in respect of taxation. They present peculiar situations and were determined upon consideration of them. Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 420, 53 S. Ct. 198, 77 L.Ed. 399; American Package Corporation v. Commissioner, 4 Cir., 125 F.2d 413, 415. The cases relied upon are not controlling here.

The subsidiary in this case was organized primarily to do a business which the petitioner had no authority to do, and was used to carry on an active business for profit.

 The general rule applicable to such cases was stated by Mr. Justice Van Devanter, speaking for the court in New Colonial Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348, wherein he said: "* * * the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, i. e., to treat them as personal to him and not transferable to or usable by another." In Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 358, 84 L.Ed. 406, construing its own decision in Burnet v. Commonwealth Improvement Company, supra, the Supreme Court said specifically that: "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages." But the government "may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." In Watson v. Commissioner, 2 Cir., 124 F.2d 437, 439, the court held the language of the Higgins case, supra, to be conclusive. This court has recognized the

rule as binding and followed it in Helvering v. Jane Holding Corporation, 8 Cir., 109 F.2d 933, 943, and in United States v. Donaldson Realty Co., 8 Cir., 106 F.2d 509. Compare Webber v. Knox, 8 Cir., 97 F.2d 921, 923; Commissioner v. Trustees of Lumber Inv. Ass'n, 7 Cir., 100 F.2d 18, 28; Planters' Cotton Oil Co. v. Hopkins, 5 Cir., 53 F.2d 825, 827; New Colonial Co. v. Helvering, 292 U.S. 435, 441, 54 S.Ct. 788, 78 L.Ed. 1348; In re Collins, 8 Cir., 75 F.2d 62, 64; United Light & Power Co. v. Commissioner, 7 Cir., 105 F.2d 866, 878; and Consumers Const. Co. v. Commissioner, 1 Cir., 94 F.2d 731, 734.

█ The Board correctly applied the law to the facts. The corporate entity of the subsidiary cannot be disregarded, nor the "tax disadvantage" resulting from its organization avoided. Higgins v. Smith, supra.

We also agree with the Board that the payment by the petitioner of the deficit of the subsidiary was a capital expenditure, not an ordinary and necessary expense of the petitioner's business.

█ The conditions which distinguish a capital investment from an ordinary and necessary business expense in cases where a stockholder contributes something to his corporation have been settled, not by unanimity of decision, but by clear weight of authority.[1] If the contribution (1) is a benefit to or has value to the stockholder and (2) becomes an asset of the corporation when transferred to it, the stockholder increases his capital investment in the corporation, and the payment is not a deductible business expense. Whether such payment was made by reason of a contractual

[1] Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Athol Mfg. Co. v. Commissioner, 1 Cir., 54 F.2d 230; Menihan v. Commissioner, 2 Cir., 79 F.2d 304, 306, certiorari denied, 296 U.S. 651, 56 S.Ct. 368, 80 L.Ed. 463; Atlantic Coast Line R. Co. v. Commissioner, 4 Cir., 81 F.2d 309, certiorari denied, 298 U.S. 656, 56 S.Ct. 676, 80 L.Ed. 1382, rehearing denied, 298 U.S. 691, 56 S.Ct. 833, 80 L.Ed. 1409; United States v. Donaldson Realty Co., 8 Cir., 106 F.2d 509; Jenkins v. Bitgood, 2 Cir., 101 F. 2d 17; In re Park's Estate, 2 Cir., 58 F. 2d 965, 966; Pennsylvania Indemnity Co. v. Commissioner, 3 Cir., 77 F.2d 92; Burns v. Commissioner, 5 Cir., 31 F.2d 399, certiorari denied, Burns v. Lucas, 280 U.S. 564, 50 S.Ct. 25, 74 L.Ed. 618; First Nat. Bank in Wichita v. Commissioner, 10 Cir., 46 F.2d 283. See also Commissioner v. Hadley, 2 Cir., 75 F.2d 485, 487; Kistler v. Burnet, 61 App.D. C. 135, 58 F.2d 687; Hamlen v. Welch, 1 Cir., 116 F.2d 413, 419; American Cigar Co. v. Commissioner, 2 Cir., 66 F. 2d 425; Newark Milk & Cream Co. v. Commissioner, 3 Cir., 34 F.2d 854; Newspaper Printing Co. v. Commissioner, 3 Cir., 56 F.2d 125. Cf. Wiggins v. Commissioner, 1 Cir., 46 F.2d 743; Shiman v. Commissioner, 2 Cir., 60 F.2d 65; New York, C. & St. L. R. R. Co. v. Helvering, 63 App.D.C. 247, 71 F.2d 956; Hill v. Commissioner, 1 Cir., 38 F.2d 165, 168.

obligation or was merely a voluntary act does not affect the result.

In this case payment of the deficit was made for the sole benefit of the petitioner, and the contribution became an asset of the subsidiary. The subsidiary had no surplus. Under the absorption agreement all the profits earned by it during the preceding years of its existence, amounting approximately to $75,000, had been paid over to the petitioner. Payment by the subsidiary of its $28,100.66 operating deficit for 1936 would have impaired its capital to that extent. Payment of this sum by the petitioner was equivalent to a contribution of capital assets to the subsidiary, made to maintain the capital structure of the subsidiary in order to enable it to continue in business for the purpose of augmenting the petitioner's income. Such a contribution by a stockholder is a capital expenditure, not an ordinary and necessary business expense.

The decision of the Board is affirmed.