Argued December 6, 1938; affirmed January 17, 1939

## EHRMAN *v.* GALLOWAY ET AL.

(86 P. (2d) 445)

*Ralph R. Bailey,* Assistant Attorney-General (I. H. Van Winkle, Attorney-General, on the brief), for appellants.

*Herbert L. Swett* and *R. R. Morris,* both of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for respondent.

BAILEY, J. This is an appeal by the defendants, who constitute the state tax commission, from a decree setting aside an order of the commission disallowing the claim of the respondent, Minnie F. Ehrman, for refund of additional intangibles income taxes and personal income taxes paid for the years 1933 and 1934. The defendants' demurrer to the amended complaint was overruled and upon the failure of the defendants to plead further, the decree which is here appealed from was entered.

Briefly stated, the ground on which the plaintiff claims a refund of the additional taxes above mentioned is that during the years 1933 and 1934 she was a member of the firm of Fleischner, Mayer & Co., a partnership, that during those years the Northwest Real Estate & Investment Company, a corporation, suffered certain losses that were in fact, she asserts, losses of the partnership, and that as a member of the partnership she is entitled to offset her proportionate part of such losses against her income for those two years.

The facts alleged in the amended complaint and admitted by the demurrer are the following: In 1897, and for many years prior thereto and continuously thereafter until September 1, 1930, Fleischner, Mayer & Co. was a partnership extensively engaged in wholesale dry goods business, with its principal place of business in Portland, Oregon. The business of the firm, however, was carried on throughout the Northwest, and in many instances it became necessary or advisable for the partnership to acquire real estate from debtors in settlement of accounts and notes receivable. In addition to the property thus acquired, the partnership owned the premises in Portland on which its factory and warehouse were located. From time to time it sold parcels of real property which it had acquired.

There were numerous partners making up the firm of Fleischner, Mayer & Co., "all of whom had to sign deeds or other instruments of title, together with their wives," and on that account as well as "to avoid title complications in case of death of any of the partners," the partnership in 1897 caused to be organized under the incorporation laws of the state of Oregon the Northwest Real Estate & Investment Company. This company was incorporated for $75,000, consisting of 750 shares of capital stock of the par value of $100 each. In 1903 the capital was reduced to $25,000. All the capital stock of the corporation has at all times been owned by the partnership, with the exception of qualifying shares for directors, of which qualifying shares, however, the partnership has at all times been the beneficial owner.

As soon as the corporation was organized the partnership transferred to it all the real property owned by the partnership, and thereafter acquired no real property in its own name. From time to time after the organization of the corporation the partnership continued to settle accounts with customers by taking real estate, as formerly, but in the name of the corporation. It also purchased additional real property for its business purposes, title to which was likewise taken in the name of the corporation. The consideration was invariably paid by the partnership, either in the form of money advanced as purchase price or by the cancelation of accounts receivable or notes due to the partnership. Title to all the property thus acquired by the corporation, except property sold and disposed of, has at all times been, and now is, vested in the corporation. The corporation never owned any real estate other than that which the partnership in the course of its business caused to be transferred to it.

No corporation books were ever kept by Northwest Real Estate & Investment Company and at no time did that corporation have any offices, agents, employees or bank accounts. All rentals and other revenue received from real property standing in the name of the corporation were "carried into the partnership books and partnership bank accounts and were treated precisely the same as other income of the partnership." Taxes, repairs, insurance, assessments and all other expenses in connection with such real property were paid by the partnership. Proceeds of the sale of real property and income therefrom were divided between the partners constituting Fleischner, Mayer & Co., according to the percentage of their partnership holdings, and were dealt with at all times as partnership income.

The income tax returns of the partnership included all receipts of the corporation as well as corporate expenses and receipts and expenses of the partnership. "All matters relating to real property nominally owned by said corporation were at all times handled and transacted by Fleischner, Mayer & Co., from whose partners the board of directors of said corporation have at all times been selected. The officers of the corporation have at all times been partners of Fleischner, Mayer & Co. In all things the corporation was treated and administered as a part of the partnership business. The sole purpose intended and accomplished by incorporation was the expeditious handling of title matters by avoidance of the necessity of obtaining signatures of the partners and their spouses, as well as complications to transfer of title in case of death of one of the partners."

The assets of the corporation have at all times been in the actual possession and control of the partnership.

The ownership of real estate standing in the name of the corporation, "together with the ownership and operation of other assets of the partnership, at all times subsequent to the incorporation of Northwest Real Estate & Investment Company, constituted a single enterprise carried on by the partnership of buying and selling dry goods at wholesale."

On or about September 1, 1930, the partnership withdrew from the dry goods business, and ever since that time "has been engaged in liquidating its assets, including the real estate nominally owned by the corporation. The partnership's books and affairs at all times since September, 1930, have been handled precisely as before and the corporate assets have been treated as partnership assets and have been permitted to remain in the corporation solely for the purpose of convenience as above stated." Due to market conditions, liquidation of the partnership business has not been completed.

During the years 1933 and 1934 six individuals comprised the partnership Fleischner, Mayer & Co., all of whom except one resided in Portland, Oregon. During those years the plaintiff was the owner of a 10⅝ per cent interest in the partnership, and no one partner owned in excess of a 21¼ per cent interest.

The net loss in operations of the corporation for the year 1933 amounted to $12,243.05, and the net loss of the partnership for that year, exclusive of the loss suffered by the corporation, was $308.53. If the loss suffered by the corporation "is to be computed with the income of Fleischner, Mayer & Co., the net loss of the latter for the year 1933 is $12,551.58." The net loss of the corporation for the year 1934 was $6,429. The net loss of the partnership for the tax year 1934, exclusive of that of the corporation, is not stated.

The tax commission ruled that the losses suffered by the corporation during the tax years 1933 and 1934 could not be taken into consideration in determining the amount of net loss suffered by the partnership during those years. The circuit court, however, set aside the order of the commission and awarded the plaintiff recovery in the sum of $70.12 as a refund of income and intangibles taxes for the year 1933, and $126.35 as refund for 1934.

It is the contention of the state tax commissioners that Northwest Real Estate & Investment Company, a corporation, is a separate and distinct entity from the partnership Fleischner, Mayer & Co., or its individual members, and that under the system of taxation enacted by the legislature of this state the loss suffered by the corporation during the years 1933 and 1934 can not be deducted by the members of the partnership in computing the amount of personal income taxes due from them to the state of Oregon for those years.

The legislature in 1929 passed an act known as the "property relief act of 1929" (chapter 448, Laws of 1929), which is commonly referred to as the personal income tax law and which imposes upon every individual subject to the act an income tax. At the same session the legislature enacted chapter 427, Laws of 1929, which provided for an excise tax on all corporations subject to the tax. This tax is based on the net income of the corporation, with an offset allowed against the tax "in the amount of taxes paid by it upon its personal property located in the state", which offset shall not exceed 90 per cent of the excise tax. Two years later, in 1931, the intangibles income tax law was enacted (chapter 335, Oregon Laws 1931), imposing a tax on income over a certain figure derived from in-

tangibles including, among other things, dividends on corporate stock.

It will thus be seen that the tax structure of this state depends to a large extent upon recognition of the independent entity of corporations. The argument of the tax commissioners is that in no instance should such entity be disregarded, except in those cases in which a corporation has been set up as a subterfuge to avoid the payment of taxes.

■ As a general rule a corporation is regarded as an artificial person created by law, with an existence wholly separate and distinct from that of its stockholders. The principle that a corporation is a separate entity apart from the individuals who hold its stock is so well established as to obviate the necessity of citation of authorities. Although conceding the general rule to be as stated above, the plaintiff maintains that there are certain well-recognized exceptions thereto in matters relating to taxation, and that the facts herein admitted call for a relaxation of the rule.

The plaintiff, in support of her contention that the court should look to substance rather than form in determining the relationship existing between Northwest Real Estate & Investment Company and Fleischner, Mayer & Co., relies largely on the case of *Southern Pacific Company v. Lowe*, 247 U. S. 330, 62 L. Ed. 1142, 38 S. Ct. 540. There the United States collector of internal revenue sought to recover from SouthernPacific company a tax "imposed upon certain dividends upon stock, in form received by" the Southern Pacific Company from Central Pacific Railway Company in the early part of the year 1914. The facts in that case were substantially the following: Prior to January 1, 1913, Southern Pacific Company, a corporation organized

under the laws of the state of Kentucky, owned all the capital stock of Central Pacific Railway Company, a corporation of the state of Utah, including the stock registered in the name of the directors. That situation had existed continuously from the incorporation of Central Pacific Railway Company in 1899.

The Central Pacific Railway Company was the successor of Central Pacific Railroad Company and acquired all its properties, which constituted part of a large system of railways owned or controlled by Southern Pacific Company. The latter company, besides being sole stockholder, was in the actual physical possession of the railroads and all other assets of the railway company, and in charge of its operations, which were conducted in accordance with the terms of a lease made by the original railroad company with Southern Pacific Company and assumed by the succeeding railway company. The Southern Pacific acted as cashier and banker for the entire system. The Central Pacific Railway Company kept no bank account, its earnings being deposited in the bank account of the Southern Pacific, and if the railway company needed money for additions and betterments or for making up a deficit of earnings, the necessary funds were advanced by the Southern Pacific. As a result of these operations, the Central Pacific Railway Company showed on its books a large surplus accumulated prior to January 1, 1913, principally in the form of a debit against the Southern Pacific, which latter company at the same time, as sole stockholder, was entitled to any and all dividends that might be declared, and, being in control of the board of directors, was able to and did control the dividend policy.

Dividends were declared by Central Pacific Railway Company and paid during the first six months of

1914 out of surplus accumulated by that company prior to January 1, 1913. "But the payment was only constructive, being carried into effect by bookkeeping entries which simply reduced the apparent surplus of the Central Pacific and reduced the apparent indebtedness of the Southern Pacific to the Central Pacific by precisely the amount of the dividends."

The question involved was whether the dividends received under these circumstances and in this manner by Southern Pacific Company were taxable as income of that company under the income tax law of 1913. The court, after reviewing and discussing at some length the provisions of the federal income tax law, stated that its view of the effect of that act "upon dividends received by the ordinary stockholder after it took effect but paid out of surplus that accrued to the corporation before that event, is set forth in *Lynch v. Hornby*, 247 U. S. 339, 62 L. Ed. 1149, 38 S. Ct. 543," to which we shall shortly refer. In stating the reasons why no tax was due from Southern Pacific Company on the dividends purportedly received from Central Pacific Railway Company, the opinion thus proceeded:

"We base our conclusion in the present case upon the view that it was the purpose and intent of Congress, while taxing 'the entire net income arising or accruing from all sources' during each year commencing with the first day of March, 1913, to refrain from taxing that which, in mere form only, bore the appearance of income accruing after that date, while in truth and in substance it accrued before; and upon the fact that the Central Pacific and the Southern Pacific were in substance identical because of the complete ownership and control which the latter possessed over the former, as stockholders and in other capacities. While the two companies were separate legal entities, yet in fact, and for all practical purposes they were merged, the former

being but a part of the latter, acting merely as its agent and subject in all things to its proper direction and control. And, besides, the funds represented by the dividends were in the actual possession and control of the Southern Pacific as well before as after the declaration of the dividends. The fact that the books were kept in accordance with the provisions of the lease, so that these funds appeared upon the accounts as an indebtedness of the lessee to the lessor, can not be controlling, in view of the practical identity between lessor and lessee.''

The court then observed: ''It is true that in ordinary cases the mere accumulation of an adequate surplus does not entitle a stockholder to dividends until the directors in their discretion declare them'', citing authorities. ''But this is not the ordinary case. * * * The case turns upon its very peculiar facts, and is distinguishable from others in which the question of identity of a controlling stockholder with his corporation has been raised.''

Argued with *Southern Pacific Company v. Lowe,* supra, and decided the same day that the opinion therein was rendered, were the cases of *Lynch v. Hornby,* supra, and *Peabody v. Eisner,* 247 U. S. 347, 62 L. Ed. 1152, 38 S. Ct. 546. In *Lynch v. Hornby,* supra, it was held that dividends declared and paid in the ordinary course by a corporation to its shareholders after March 1, 1913, whether from current earnings or from a surplus accumulated before that date, were taxable to the individual shareholders as income, under the surtax provision of the income tax law. To like effect is the holding in *Peabody v. Eisner,* supra.

*Gulf Oil Corporation v. Lewellyn,* 248 U. S. 71, 63 L. Ed. 133, 39 S. Ct. 35, involved a situation similar to that which confronted the court in *Southern Pacific*

*Company v. Lowe,* supra. It was there held that the government was not entitled to recover a tax which was levied on certain dividends as income received by Gulf Oil Corporation from other corporations which were its subsidiaries. In denying the right to collect the tax the court stated:

"It is true that the petitioner and its subsidiaries were distinct beings in contemplation of law, but the facts that they were related as parts of one enterprise, all owned by the petitioner, that the debts were all enterprise debts due to members, and that the dividends represented earnings that had been made in former years and that practically had been converted into capital, unite to convince us that the transaction should be regarded as bookkeeping rather than as 'dividends declared and paid in the ordinary course by a corporation.'"

In *North Jersey Title Insurance Company v. Commissioner,* 84 Fed. (2d) 898, the title insurance company had formed a corporation known as Belhall Company to acquire and deal with properties in which the title insurance company was interested. All the stock of the new company except one share to qualify the holder as a resident officer was held by the title insurance company. Belhall Company had no paid officers and only two paid employes, and obtained funds as needed from the parent company. The circuit court of appeals for the third circuit held that although the two companies were separate entities nevertheless for the purpose of taxation the business of both should be considered as one enterprise. In this connection the court said:

"The principle that substance and not form should control in the application of income tax law is fundamental. Fictional corporate camouflage can not be made the device to escape taxation. On the other

hand, equal equity demands that the creation of a subsidiary corporate structure with no purpose of evading tax but solely for the purpose of meeting the exigencies of a serious and possible fatal financial situation should not be regarded as the birth of a new entity completely unidentified with the former for taxing purposes, particularly under the peculiar circumstances surrounding the instant case."

The circuit court of appeals in *Central Life Assurance Society (Mutual) v. Commissioner,* 51 Fed. (2d) 939, reversed the holding of the board of tax appeals that certain taxes were due from that company. The issue there involved was whether earnings collected by the corporation "constituted income of the petitioner, in a taxable sense, or were income of the stockholders". In upholding the petitioner the court observed:

"Tax laws are essentially practical in their purposes and application, and the federal income tax laws are no exception. While, for purposes of convenience and certainty in collection of such taxes, it is sometimes provided that those who collect income for others shall pay therefrom the taxes thereon, yet a cardinal purpose of the income tax laws is to tax the income to the person who has the right or beneficial interest therein, and not to throw the burden upon a mere collector or conduit through whom or which the income passes. * * * It is also a basic principle in the application of such laws that substance and not mere form be regarded as governing. * * * It is unnecessary to determine whether the relationship here is technically a fullclothed trust or is something else, although the facts here may well be held to establish a trust relation as to this income."

Another case which follows the principle laid down in the decision just quoted is *112 West 59th Street Corporation v. Helvering,* 62 App. D. C. 350, 68 Fed. (2d) 397.

On June 15, 1937, the board of tax appeals in *Mark A. Mayer v. Commissioner,* 36 B. T. A. 117, on the same facts here involved with the exception that another member of the partnership Fleischner, Mayer & Co. was concerned, held that the gross income of Fleischner, Mayer & Co. should reflect the income and deductions of the corporation Northwest Real Estate & Investment Company in determining the amount of federal income tax which Mayer was required to pay. In so deciding the board of tax appeals stated: "The peculiar circumstances presented in the case do not, in our opinion, warrant a holding that for the taxable year the corporation should be treated as a taxable entity separate from the partnership."

In *United States v. Phellis,* 257 U. S. 156, 168, 66 L. Ed. 180, 42 S. Ct. 63, the court said:

"We recognize the importance of regarding matters of substance and disregarding forms in applying the provisions of the sixteenth amendment and income tax laws enacted thereunder. In a number of cases beside those just cited, we have under varying conditions followed the rule": citing *Lynch v. Turrish,* 247 U. S. 221, 62 L. Ed. 1087, 38 S. Ct. 537; *Southern Pacific Company v. Lowe,* supra, and *Gulf Oil Corporation v. Lewellyn,* supra.

See also, in this connection, *United States v. Jelenko,* 23 Fed. (2d) 511, and *Helvering v. Gordon,* 87 Fed. (2d) 663.

The authorities upon which the state tax commissioners rely to sustain their contention that the corporate entity of Northwest Real Estate & Investment Company cannot be disregarded will now be referred to and briefly discussed.

*New Colonial Ice Co. v. Helvering,* 292 U. S. 435, 78 L. Ed. 1348, 54 S. Ct. 788, involved the organization of a

new corporation and a transfer to it of all the assets and business of an older corporation. In answering the contention of the petitioner that ''for all practical purposes the new corporation is the same entity as the old one and therefore the same taxpayer'', the court said:

''This is not in accord with the view on which the stockholders and creditors proceeded when the new company was brought into being. They deserted the old company and turned to the new one because they regarded it as a distinct corporate entity and therefore free from difficulties attending the old one. Having sought and reaped the advantages incident to the change, it well may be that they would encounter some embarrassment in now objecting to an incidental and remote disadvantage such as is here in question. But, be this as it may, we are of opinion that in law and in fact the two corporations were not identical but distinct. This was plainly implied in the transfer of the assets and business from one to the other. That transaction was voluntary and contractual, not by operation of law. Thereafter neither corporation had any control over the other; the old corporation had no interest in the assets or business, and the chance of gain and the risk of loss were wholly with the new one'': citing in support of the last statement, Southern Pacific Company v. Lowe, *supra,* and Gulf Oil Corporation v. Lewellyn, *supra.*

The court further stated:

''As a general rule a corporation and its stockholders are deemed separate entities and this is true in respect of tax problems. Of course, the rule is subject to the qualification that the separate entity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights.''

The two cases last above cited are again mentioned here as authority for the qualification of the rule.

In *Burnet v. Commonwealth Improvement Company,* 287 U. S. 415, 77 L. Ed. 399, 53 S. Ct. 198, the question involved was whether a corporation organized by one individual to handle his property and after his death his estate should be considered separate and distinct from his estate for taxation purposes. The court held that the corporation was "avowedly utilized to bring about a change in ownership beneficial to" the estate and that for years the corporation and the estate "were recognized and treated as different things and taxed accordingly upon separate returns."

*Dalton v. Bowers,* 287 U. S. 404, 77 L. Ed. 389, 53 S. Ct. 205, and *Burnet v. Clark,* 287 U. S. 410, 77 L. Ed. 397, 53 S. Ct. 207, were decided on the same day as *Burnet v. Commonwealth Improvement Company,* supra. Neither of those cases, although relied upon by the commissioners, is in point with reference to the peculiar facts here involved.

*Ford Motor Company v. United States,* 9 F. S. 590; *Jamison v. Edwards,* 3 F. S. 302; *Old Colony Trust Company v. Commissioner,* 69 Fed. (2d) 699; *Goldberg v. Commissioner,* 36 Fed. (2d) 551; *Commissioner v. Eldridge,* 79 Fed. (2d) 629, 100 A. L. R. 500; *Ames v. Commissioner,* 68 Fed. (2d) 301; and *Nixon v. Lucas,* 42 Fed. (2d) 833, are additional authorities relied upon by the commissioners in support of their contention that the separate legal entity of Northwest Real Estate & Investment Company should not be disregarded in the instant case. The facts in those cases, except *Nixon v. Lucas,* are materially different from those in the case before us and we do not consider them here in point. It may, however, be observed that in *Ames v. Commissioner,* supra, the court recognized the rule here contended for by the plaintiff when it stated that, "If a per-

son regularly carrying on a certain business uses a corporation solely as an adjunct to it and solely as an instrumentality or agency by which the principal business is carried on, the losses of such a corporation are losses of the business of which it formed a part; and they are deductible accordingly." And in *Goldberg v. Commissioner,* supra, with reference to an individual transaction conducted by Goldberg which he contended was a transaction of the corporation, the opinion states: "The New Jersey house and lot purchase and sale was a private individual transaction in no way connected with the corporation. It did not even represent a method adopted by appellant in transacting the business of the corporation."

In *Nixon v. Lucas,* supra, a partnership consisting of three members acquired, some six years after the federal income tax law had been enacted, shares of stock in an existing corporation. The principal use of this corporation by the partnership was to hold title to real property. As the business of the corporation was unsuccessful and the company needed funds, the partners made advancements as loans. In referring to the dealings between the partnership and the corporation, the court remarked:

"In the case at bar the partners chose, for some reason not disclosed, to deal with the company as a legal person, which they could do if they wished. Their agreements created contracts with the same obligations as though the company had been an individual. There were no attendant circumstances which show that they were not so intended, as in the case of contracts made as a jest, or only to serve as a blind."

It was there held that the partnership and the corporation should be considered as distinct entities for taxation purposes.

We have not here attempted to review all the authorities which the commissioners have cited. Most of them are on the general proposition that corporations are separate and distinct entities from their stockholders.

In view of the peculiar circumstances in the case at bar we are of the opinion that Northwest Real Estate & Investment Company for the purpose of determining income and intangibles taxes due the state of Oregon from the plaintiff should be considered part of the partnership Fleischner, Mayer & Co. The corporation was organized some thirty years before the enactment of the laws providing for the levying of those taxes. There was no account kept of the value of the real property belonging to the partnership and taken in the name of the corporation. No separate account was kept of the amount of advances made by the partnership for the benefit of the corporation. The facts as hereinbefore related clearly show that the corporation was solely an adjunct to the business of the partnership.

We are not here concerned with the question of payment by the corporation of an excise tax or annual corporation dues.

No error was committed by the circuit court in ruling that the plaintiff was entitled to deductions from her gross income for the years 1933 and 1934 for her proportionate share of the losses of the corporation for those years. The decree is therefore affirmed.