**INLAND DEVELOPMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 2210.**

Circuit Court of Appeals, Tenth Circuit.

June 9, 1941.

Roy C. Lytle, of Oklahoma City, Okl., for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Newton K. Fox, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The determinative question presented on this petition to review a decision of the Board of Tax Appeals is whether Inland Development Company, hereinafter called the taxpayer, was a personal holding company and therefore liable for surtax for the year 1934 under section 351 of the Revenue Act of 1934, 48 Stat. 680, 751, 26 U.S. C.A. Int.Rev.Acts, page 757. The Commissioner of Internal Revenue found that

the taxpayer was such a company, and a resulting deficiency in surtax followed; the Board sustained that action; and the taxpayer seeks review.

The cause was submitted to the Board on these stipulated facts. Robert A. Wallace owned various oil and gas leases in Oklahoma, but he lacked sufficient capital for development and in consequence was in danger of losing them. On September 9, 1932, Wallace and George W. Robinson, as trustee, entered into a certain written contract in which it was agreed that Wallace should transfer to Robinson, as trustee, certain leases and overriding royalties; that the trustee should cause the taxpayer to be incorporated, and should then transfer and assign such leases and royalties to it; and that in consideration therefor the corporation should issue 30,000 shares of its common stock to Wallace or his nominee. The contract was subsequently amended to reduce the stock ownership of Wallace and to change other provisions not material here. On September 12, the taxpayer was incorporated under the laws of Delaware, and was subsequently authorized to engage in business in Oklahoma; and it issued common stock of the value of $150,000 for which it received $135,000 in cash, and leases, royalties and other property valued at $15,000. Pending consummation of the entire transaction, Wallace conveyed the leases and overriding royalties to the trustee. At the request of the taxpayer, the trustee assigned one of the leases to Alpha Oil Company, one to Corsican Oil Company, and one to Wisconsin Oil Company, all being corporations organized under the laws of Oklahoma; and he transferred all of the remaining leases and royalties to the taxpayer. Alpha Oil Company, Corsican Oil Company, and Wisconsin Oil Company issued and delivered to the taxpayer their entire authorized capital stock in consideration for the leases respectively transferred to them, and at all times thereafter during the existence of such corporations the taxpayer owned their entire capital stock. Each subsidiary owned the lease transferred to it in that manner but it had no other assets of any kind. A well was drilled for each subsidiary under a contract executed by the subsidiary, but all obligations incurred in drilling and operating the wells were paid by the taxpayer. As the taxpayer paid the indebtedness of each subsidiary, it charged the subsidiary's account on the books of the taxpayer with the amount. The income from the sale of oil produced from the wells was received by the taxpayer in accordance with division orders signed by the respective subsidiaries, was credited to the account of the particular subsidiary on the books of the taxpayer, and was deposited in the bank to the account of the taxpayer. All sums borrowed for operating expenses were borrowed by the taxpayer, except in one instance in which the property of one subsidiary was mortgaged to secure payment of certain obligations of the taxpayer. All employees were engaged and paid by the taxpayer. Both direct and indirect labor bills were allocated to the subsidiary companies on the books of the taxpayer on the basis of the time spent on the respective leasehold estates. None of the subsidiaries had a bank account, and none ever paid salaries to employees. During the years 1933 and 1934, the taxpayer transferred one of its undeveloped leases to Timken Oil Company, a corporation organized under the laws of Oklahoma, and took as consideration for it all of the authorized and issued capital stock of that company. A well was drilled for the Timken Company under a contract executed by it, and such leasehold was operated in the same manner as those of the other subsidiary companies. The taxpayer likewise transferred one of its leases to Franco Oil Company, a corporation organized under the laws of Oklahoma, and received in exchange for it all of the authorized capital stock of that company. A well was drilled for the Franco Company under a contract executed by it. That well was operated in the same manner as the wells upon leases of the other subsidiary companies; but it never returned its investment and the lease was subsequently released to the lessor. During 1934, the Victor Oil Company, likewise a wholly owned subsidiary of the taxpayer, acquired certain leases. The taxpayer paid for them and charged the amount on its books against the account of the subsidiary. On December 31, 1933, the books of the taxpayer contained an account receivable from subsidiaries of $168,053.03; on December 31, 1934, of $168,157.88; and on December 31, 1935, of $223,307.33.

At a meeting of the directors of Alpha Oil Company, held June 15, 1934, it was resolved that a dividend of $4.25 per share be declared on the stock of the company, payable on July 1st. On December 31, an entry was made on the books of the subsidiary charging the earned surplus account with

$53,125 and crediting the account of the taxpayer with that amount; on the same day an entry was made on the books of the taxpayer charging the account of the subsidiary and crediting dividends received with the same amount; and the taxpayer paid to its stockholders in dividends out of such amount the sum of $30,000, part of the remaining sum was used for expenses of the taxpayer, and the balance was added to its surplus.

The gross income of the taxpayer during the year 1934 was $63,288.22, of which slightly more than $9,000 was interest received, $900 plus was miscellaneous income, and $53,125 represented the funds referred to in the resolution of the Board of Directors of Alpha Oil Company. More than fifty per cent in value of the stock of the taxpayer was owned by five or less persons.

Section 351, supra, levied a surtax upon every personal holding company equal to thirty per cent of its undistributed net income up to $100,000, plus forty per cent of the amount thereof in excess of that sum; and it defined the term "personal holding company." The material part of the definition reads: "The term 'personal holding company' means any corporation (other than a corporation exempt from taxation under section 101, and other than a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits, and other than a life-insurance company or surety company) if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals."

Section 115(a), 26 U.S.C.A. Int.Rev.Acts, page 703, defined the term "dividend" to mean any distribution made by a corporation to its shareholders, in money or other property, out of earnings or profits accumulated since February 28, 1913.

The legislative purpose of section 351 was to end a long practiced method of tax avoidance. That method was for an individual to form a corporation, take its entire capital stock in exchange for his personal holdings in stock, bonds, or other income-producing property, and in that manner subject the income to corporation tax but avoid individual surtax if the income was not distributed. Noteman v. Welch, 1 Cir., 108 F.2d 206. However, in order for a corporation to come within the statute and be subject to the surtax there imposed, at least eighty per cent of its gross income for the taxable year must have been derived from royalties, dividends, interest, annuities, and the sale of stocks and securities, or from two or more of such sources. The act makes that clear. The Board treated the taxpayer and its several wholly owned subsidiaries as separate and distinct corporate entities; and it treated the item of $53,125 as a dividend which the taxpayer received from Alpha Oil Company. That sum was more than eighty per cent of the total income of the taxpayer, and the stock of the taxpayer was owned by less than five persons. It was upon that basis that the Board concluded that the taxpayer was a personal holding company.

It is well settled that in ordinary circumstances a corporation and its stockholders, whether one or more, are deemed separate entities, and generally that apartness is preserved when dealing with questions relating to taxes. Klein v. Board of Supervisors, 282 U.S. 19, 51 S.Ct. 15, 75 L. Ed. 140, 73 A.L.R. 679; Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L. Ed. 1348; Continental Oil Co. v. Jones, 10 Cir., 113 F.2d 557, certiorari denied, 311 U.S. 687, 61 S.Ct. 64, 85 L.Ed. ——.

But it is equally well settled that extraordinary circumstances sometimes exact the disregard of such separateness of entity in the solution of problems relating to taxes. Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Gulf Oil Corporation v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; Burnet v. Commonwealth Improvement Co., supra; Gregory v. Helvering, 293 U. S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Continental Oil Co. v. Jones, supra.

The fact that a parent corporation owns all of the stock of its subsidiary, of itself and alone, does not warrant the dis-

regard of their separateness of corporate entity. That separateness is disregarded where the ownership of stock is used to dominate and control the subsidiary in such manner and to such extent that it becomes a mere agency or instrumentality of the parent, United States v. Lehigh Valley R. R. Co., 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; United States v. Delaware, Lackawanna & Western R. R. Co., 238 U.S. 516, 35 S.Ct. 873, 59 L.Ed. 1438; Chicago, M. & St. Paul Ry. Co. v. Minneapolis Civic Association, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; United States v. Reading Co., 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760; Continental Oil Co. v. Jones, supra; or where the maintenance of such apartness would work a fraud or do injustice, Taylor v. Standard Gas Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669; Griffiths v. Commissioner, supra; Higgins v. Smith, supra; Continental Oil Co. v. Jones, supra.

■■ This taxpayer owned all of the stock of the several subsidiaries. Each subsidiary owned no assets whatever except the one lease transferred to it in the manner indicated. The subsidiary in each instance executed the contract under which the well was drilled but the taxpayer paid all costs and expenses of drilling and operation, and it received directly all of the income arising from the sale of royalty oil. The subsidiaries had no employees, the work on the leasehold estates being done by employees of the taxpayer, no offices, no books, except those kept by employees of the taxpayer in its offices, and no bank account. They did not buy, acquire, manage, control, sell, receive, or pay out anything. The taxpayer did all of that, without voice on the part of the subsidiaries. It is difficult to understand the purpose or motive for causing the subsidiaries to be formed and in operating the business in the manner outlined. Escape from liability, or limitation of liability was not the purpose, as the taxpayer bore the entire financial responsibility; and the Commissioner does not contend that either savings in taxes or fraud of any kind was the incentive. But whatever the underlying reason may have been, it is clear that the subsidiaries were nothing more than voiceless departments or instrumentalities of the taxpayer. Substance is paramount over form in the application of income tax laws. United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Tulsa Tribune Co. v. Commissioner of Internal Revenue, 10 Cir., 58 F.2d 937; Reynolds v. Cooper, 10 Cir., 64 F.2d 644, affirmed, 291 U.S. 192, 54 S.Ct. 356, 78 L.Ed. 725; North Jersey Title Insurance Co. v. Commissioner of Internal Revenue, 3 Cir., 84 F.2d 898; Commissioner of Internal Revenue v. Texas Pipe Line Co., 3 Cir., 87 F.2d 662. In harmony with that recognized rule, the separateness of corporate entity of the taxpayer and its subsidiaries should be disregarded in determining whether the taxpayer was a holding company, coming within the ambit of the statute. Southern Pacific Co. v. Lowe, supra; Gulf Oil Corporation v. Lewellyn, supra; Griffiths v. Commissioner, supra; Higgins v. Smith, supra; Continental Oil Co. v. Jones, supra; North Jersey Title Insurance Co. v. Commissioner of Internal Revenue, supra; Ehrman v. Galloway, 160 Or. 418, 86 P.2d 445.

■■ The resolution of the Board of Directors of Alpha Oil Company purported to declare a dividend upon the outstanding stock of the company; the entries on its books, made more than six months later, charged the earned surplus account and credited the account of the taxpayer in the sum of $53,125; and the entries made on the books of the taxpayer on the same day charged the account of Alpha Oil Company and credited dividends with the identical amount. The Commissioner relies strongly upon that action of the directors and those entries in the books as constituting the receipt of dividends in such amount. The nomenclature of the Board of Directors did not determine the essence or nature of the action taken. Calling it a dividend did not make it so. The qualities and properties of a thing define and mark it. The name applied is no part of the thing itself and should not influence a court in classifying it. Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971. And book entries are merely evidentiary, not conclusive of the nature of the action taken. Doyle v. Mitchell Brothers Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054. The subsidiary did not then or at any other time have any accumulated surplus. It did not then or at any other time have on hand any money for distribution as a dividend. The proceeds from the sale of royalty oil from the well had gone directly to the taxpayer. It never reached or was in the custody or control of the subsidiary. Through stock ownership, the taxpayer owned the money. And the taxpayer had it in its possession, unless it had already been expended. In any event, the subsidiary did not have any part of it for dividend or other purpose.

990

The action of the Board of Directors was merely a paper transaction, and the entries made upon the books of the two corporations were mere book entries. Considered separately or together, they did not constitute a bona fide dividend. The item of $53,125 represented income of the taxpayer from the sale of oil, not a dividend upon stock within the contemplation of section 351, supra. It follows that if any part of the gross income of the taxpayer came from the sources enumerated in the statute it was quite small in amount—far less than eighty per cent, and therefore the taxpayer was not a personal holding company as defined in the act.

The order of the Board of Tax Appeals is reversed.