## AMERICAN PACKAGE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4872.

Circuit Court of Appeals, Fourth Circuit.

Jan. 29, 1942.

J. Gilmer Korner, Jr., of Washington, D. C. (David H. Blair and Richard S. Doyle, both of Washington, D. C., on the brief), for petitioner.

Joseph M. Jones, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The question raised by this petition for review is whether the American Package Corporation is a personal holding company within the meaning of Sections 352 and 353 of the Revenue Act of 1936, 49 Stat. 1648, as added by the Revenue Act of 1937, 50 Stat. 813, 26 U.S.C.A. Int.Rev. Acts, pages 938, 939, and as such is subject to the surtax upon undistributed net income under the provisions of Section 351 of the statute, 26 U.S.C.A. Int.Rev. Acts, page 938.

On January 9, 1936, the taxpayer was incorporated under the law of Delaware in order to eliminate wasteful competition and promote profitable operations of the business of four corporations, to wit: Jersey Package Company, a New Jersey corporation, Planters Manufacturing Company, a Virginia corporation, Riverside Manufacturing Company, a North Carolina corporation, and Riverside Land and Timber Company, a Delaware corporation with its principal office in North Carolina. All of these corporations were engaged in the manufacture of hampers, baskets, crates, wooden veneer and wooden boxes for the carriage of fruits and vegetables. It was realized that if the assets of the four corporations were acquired by one corporation at their face value, heavy taxes upon the ensuing profits would be incurred. Accordingly, a reorganization was effected by an agreement that the taxpayer should issue its shares of stock for the shares of stock of the four companies named, whereby the taxpayer became the parent, and the four companies its subsidiary corporations.

The taxpayer now has 54 stockholders, among whom five family groups own more than 50 per cent of the stock. Its net income for 1937 consisted entirely of dividends received from the four subsidiary corporations. The Board of Tax Appeals approved the determination of the Commissioner that the petitioner had an undistributed net income for 1937 of $6,097.27 and held that the petitioner was a personal

**414**

holding company within the definition of the statute.

The relevant sections of the statute are as follows:

Revenue Act of 1936, C. 690, 49 Stat. 1648.

Sec. 351. As added by the Revenue Act of 1937, c. 815, 50 Stat. 813, Sec. 1. Surtax on Personal Holding Companies.

"There shall be levied, collected, and paid, for each taxable year (in addition to the taxes imposed by Title 1 [II]), upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

"(1) 65 per centum of the amount thereof not in excess of $2,000; plus

"(2) 75 per centum of the amount thereof in excess of $2,000."

Sec. 352. As added by the Revenue Act of 1937, c. 815, 50 Stat. 813, Sec. 1. Definition of Personal Holding Company.

"(a) General Rule. For the purposes of this title and of Title 1 [I] the term 'personal holding company' means any corporation if—

"(1) Gross income requirement. At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 353; but if the corporation is a personal holding company with respect to any taxable year, then, for each subsequent taxable year, the minimum percentage shall be 70 per centum in lieu of 80 per centum, until a taxable year during the whole of the last half of which the stock ownership required by paragraph (2) does not exist, or until the expiration of three consecutive taxable years in each of which less than 70 per centum of the gross income is personal holding company income; and

"(2) Stock ownership requirement. At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

"(b) Exceptions. The term 'personal holding company' does not include a corporation exempt from taxation under section 101, a bank as defined in section 104, a life insurance company, a surety company, or, except with respect to a taxable year ending on or before the date of the enactment of the Revenue Act of 1937, a foreign personal holding company as defined in section 331."

Sec. 353. (As Added by the Revenue Act of 1937, c. 815, 50 Stat. 813, Sec. 1.) Personal Holding Company income.

"For the purposes of this title the term 'personal holding company income' means the portion of the gross income which consists of:

"(a) Dividends, interest, royalties (other than mineral, oil, or gas royalties), annuities."

The taxpayer admits that it falls within the letter of the statute but contends that its resemblance to a holding company is superficial only and that when its true nature is understood, it is seen that it does not come within the spirit of the legislation; and for this purpose it refers to the circumstances under which it was formed and is now being operated. Before the reorganization was effected, a request for a ruling upon the proposed plan was made of the Bureau of Internal Revenue and after certain modifications the Commissioner ruled that the plan satisfied the definition of the corporate reorganization set forth in Section 112 (g) (1) (B) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, page 695. The Commissioner summarized the reorganization agreement which had been executed, as follows: "On December 31, 1935, an agreement was entered into among all the stockholders of the above companies, stating that the parties are desirous of consolidating and unifying the operations of said corporations under one control and management in order to effectuate desirable business ends favorable to all parties concerned, and in order to effectuate the desired aim agreeing to enter into and consummate, as a reorganization, a change from business enterprises conducted respectively by single corporations to the same business enterprise conducted by a parent and subsidiary corporations."

As to the actual operation of the taxpayer, the Board made the following findings of fact:

"The affairs of the petitioner corporation are conducted through a board of directors of nine, who are also officers of the subsidiary corporations. The board of directors organize a number of committees whose duty it was to make recommendations to the petitioner's board of directors for the purpose of management of the subsidiary corporations. The board of directors met at least once a month at different places for the purpose of passing

upon matters which would properly come before them. The activities of the subsidiary corporations were subject to the control and direction of the board of directors of the petitioner. No important action was taken by the boards of directors of the subsidiary companies without the prior approval of the board of directors of the petitioner. The petitioner's board of directors even instructed the boards of directors of the subsidiary companies as to the amount of dividends which each subsidiary was to pay and, pursuant to such instruction, the boards of directors of the subsidiaries declared dividends and the same were paid into the treasury of the petitioner.

"Although the bylaws of the petitioner corporation provided for salaries to be paid to the officers of petitioner, the board of directors agreed that the salaries for at least 1937 should be paid by the subsidiary companies. The result was that the petitioner paid no salaries and only nominal amounts for expenses during 1937. The return filed by the petitioner for that year, as above indicated, showed only $669.88 of expenses paid. Of the $152,185.40 of dividends received from the subsidiary company, $152,515.52 was reported on the tax return as net income for excess profits tax computation."

\*     \*     \*     \*     \*

"The petitioner's net income for 1937 consisted entirely of dividends received from the four subsidiary corporations.

"The petitioner's income tax return for 1937 was made upon the accrual basis."

More particularly it is pointed out with respect to each subsidiary corporation that the parent corporation designates the officers and employees, discharges and fixes the salaries of all employees except common laborers; that it arranges all financing for the business as a whole, allocating the money among the subsidiaries as it deems proper; that it buys all the raw materials, distributes them amongst the subsidiaries and directs the kind of product to be manufactured and the improvements and repairs to be made by each; that it controls the accounting and consolidates the accounts of all the subsidiaries into one general accounting system. In practical effect, the parent corporation is the controlling head and the subsidiaries are the departments or branches of a single business.

On the other hand, it should be noted that each subsidiary has title to its own assets and operates its own plant subject to the parental control. In these vital respects the circumstances differ from those considered in two cases upon which the taxpayer especially relies, to wit: United States v. Brager Bldg. & Land Corp., 4 Cir., 124 F.2d 349, decided December 12, 1941, and Inland Development Co. v. Commissioner, 10 Cir., 120 F.2d 986. In the first mentioned case the corporate separateness of a subsidiary corporation was ignored since it existed merely to hold title to real estate and had no other function or activity. In the second case a corporation whose stock was held by less than five persons owned various oil and gas leases and caused three of them to be assigned, one to each of three subsidiary corporations. The part which the parent and subsidiary corporations played in the actual operation of the business is thus described in the decision of the court (120 F.2d at page 989): "This taxpayer owned all of the stock of the several subsidiaries. Each subsidiary owned no assets whatever except the one lease transferred to it in the manner indicated. The subsidiary in each instance executed the contract under which the well was drilled but the taxpayer paid all costs and expenses of drilling and operation, and it received directly all of the income arising from the sale of royalty oil. The subsidiaries had no employees, the work on the leasehold estates being done by employees of the taxpayer, no offices, no books, except those kept by employees of the taxpayer in its offices, and no bank account. They did not buy, acquire, manage, control, sell, receive, or pay out anything. The taxpayer did all of that, without voice on the part of the subsidiaries."

Here again the corporate entity was ignored and it was held that the parent corporation was not a personal holding company subject to surtax within the meaning of the Revenue Act of 1934.

The shadowy existence of the subsidiary corporations in these cases serves to emphasize the substantial reality of the subsidiaries in the case before us. Indeed the taxpayer can hardly question the reality of the corporate reorganization to which it became a party after receiving the Commissioner's ruling upon the plan. In their requests for a ruling the four preexisting corporations expressed the understanding

that when the reorganization became effective, the taxpayer would own all of their stock and operate them as subsidiaries, but that there would be no consolidation of returns and "that dividends from the constituent operating companies" would be subject to the intercompany provisions of the Revenue Acts. It must be held in view of all the circumstances that the subsidiary corporations had substantial existence and that the dividends which they declared and paid to the parent in the tax year were in fact and in law dividends rather than income received by it from departments of its business.

■ The substance rather than the form of its corporate organization is insisted upon by the taxpayer in order to implement its main argument that although it is a holding company whose stock is owned directly or indirectly by not more than five individuals, and although at least 80 per cent of its gross income for the taxable year consisted of dividends, nevertheless it is not the kind of personal holding company that the statute was designed to reach. The contention is not without plausibility. The evil which Congress desired to eradicate was a prevailing corporate form of tax avoidance, known as the incorporated pocketbook, and designed to afford the stockholders an escape from the imposition of the surtax upon large personal incomes.

But it does not follow that the taxpayer in this case is exempt from the provisions of the act. Congress had previously tried to correct the evil by the enactment of Section 104 of the Revenue Act of 1932, 47 Stat. 169, 195, 26 U.S.C.A. Int.Rev. Acts, page 508, wherein an additional 50 per cent tax was imposed upon the accumulation of gains by a corporation formed to prevent the imposition of a surtax on its stockholders; and the accumulation of gains beyond the reasonable needs of the business was made prima facie evidence of this purpose. Difficulty was met in giving effect to the section when the defense was raised that an accumulation of profits was necessary to promote the interest of the business. To offset this defense, a provision similar to Section 351 of the Revenue Act of 1936 was first inserted in the Act of 1934 and continued in subsequent years so as to standardize the practice and to furnish a test by which the existence of a personal holding company subject to the surtax could be easily ascertained. Congress realized that there was danger that the broad terms of the act might cover legitimate operating companies that were not formed for tax avoidance, and in the course of the years certain exceptions and omissions were made from the statutes, for example, the omission of rent from the items of "personal holding company income" defined in Section 353 of the Act of 1936, the exceptions of a bank or surety company from Section 352 (2) (b) of the Act and the exception of personal finance companies from the definition of "personal holding company" in later enactments of the section. It is therefore impossible to say that the effect which the statute would have upon corporations engaged in substantial operations was not in the Congressional mind.

The legislative history of the section is fully set out in the opinion of Judge Magruder in Noteman v. Welch, 1 Cir., 108 F.2d 206, where a similar problem was considered and it was held that the income of small loan companies which answered to the description of the statute was subject to the surtax although they did not present a typical instance of the abuse described and were not considered by Congress so far as the legislative history disclosed. The court said (108 F.2d at pages 208, 209) : "This, of course, does not necessarily mean that such companies are exempt from the tax imposed by Section 351. It not infrequently happens that legislative bodies, with specific instances of abuse in mind, phrase tax legislation in such broad terms as to include persons or groups of persons not specifically contemplated. The alternative is over-particularization, which may lend itself to evasion by clever changes of form or method. In the present instance it was pointed out at the committee hearings that the term 'personal holding company' was so broadly defined that legitimate operating companies might be subjected to its provisions. However, the House was unwilling to make specific exemptions except for banks and insurance companies. The Senate restricted somewhat the application of these two exemptions, but in response to the urgings of representatives of the real estate business eliminated the word 'rents' from the Section. The committee reports in both the House and the Senate, taking note of the objection that the language of the bill might include some bona fide

operating companies which were not formed for any purpose of tax evasion, said that the bill would work no real hardship upon any corporation except one that was being used to reduce the surtaxes of its stockholders, because the corporation 'can always escape this tax by distributing to its stockholders at least 90 per cent of its adjusted net income.' Section 351 as finally passed and approved on May 10, 1934, followed the Senate version."

The same result was reached in O'Sullivan Rubber Co. v. Commissioner, 2 Cir., 120 F.2d 845, where it was held that a dissolved corporation in process of liquidation that otherwise answered to the description of the statutory personal holding company, was subject to the provisions of the act. Speaking for the court Judge Frank said (120 F.2d at pages 847, 848) "But, urges the petitioner, the personal holding surtax was enacted to remedy the evil of the 'incorporated pocket book,' deliberately created to reduce the personal taxes of those who created them, and, therefore, to impose the tax upon a corporation in petitioner's position is a perversion of the Congressional purpose. We may assume that the taxpayer here was not deliberately aiming to relieve its stockholders from personal taxation. It is, however, abundantly clear that Congress, in correcting an evil, is not narrowly confined to the specific instances which suggested the remedy. 'Of course, all personal holding companies were not conceived in sin—many were organized for legitimate personal or business reasons; but Congress has made little distinction between the goats and the sheep'. In enacting the very section being applied here, Congress was attempting to foreclose the defense, available under section 104 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 509, that the accumulation of profits was responsive to a legitimate business need. See Committee on Ways and Means, 73d Cong., 2nd Sess., House Report 704, p. 12: 'The effect of this system * * * is to provide for a tax which will be automatically levied upon the holding company without any necessity for proving a purpose of avoiding surtaxes.' Cf. Committee on Finance, 73d Cong. 2nd Sess., Senate Report No. 558, p. 15."

See, also, Girard Investment Co. v. Commissioner, 3 Cir., 122 F.2d 843; Commis-

sioner v. Affiliated Enterprises, 10 Cir., 123 F.2d 665.

We are in accord with these holdings, and the decision of the Board of Tax Appeals will therefore be affirmed.