## ESMOND MILLS et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3803.

Circuit Court of Appeals, First Circuit.

Jan. 7, 1943.

Andrew B. Trudgian, of New York City, for petitioners.

N. Barr Miller, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for the Commissioner.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The Board of Tax Appeals has affirmed the action of the Commissioner of Internal Revenue in determining deficiencies in income taxes of the petitioners, The Esmond Mills and The Esmond Mills, Inc., transferee of the assets of The Esmond Mills, in the amounts of $9,370.33 and $31,119.51 for the years 1936 and 1937, respectively, and in excess profits tax in the amount of $6,549.50 for the year 1937. The petitioners have appealed.

The findings of fact which incorporate a stipulation by the parties are substantially as follows: The Esmond Mills, hereinafter called Esmond, a Massachusetts corporation, located at Esmond, Rhode Island, manufactured and sold blankets and other products. During the years 1936, 1937 and 1938, it owned all of the capital stock of

The Smithfield Company, hereinafter called Smithfield, also a Massachusetts corporation, located at Esmond. In the year 1937, the subsidiary was solely engaged in the business of buying cotton and wool, and took title to the goods in its own name until transferred to Esmond. The latter bought a large part of the cotton and wool used by it from Smithfield and on the transfer of the title to this merchandise Smithfield was credited with the cost of the same, plus "commissions", which was its only income for 1937, and was reported in its income and excess profits tax return for that year. The two companies kept their books of account and made their income and excess profits tax returns on an accrual basis of accounting. Esmond valued its inventories on the basis of cost or market, whichever was lower, in determining its profits for the taxable year 1937 for federal income and excess profits tax purposes. Smithfield's books and balance sheet for 1937 showed an inventory of wool and cotton at the end of 1936 and 1937 in the amounts of $174,269.92 and $356,840.10, respectively. During 1937, after it had purchased a quantity of cotton and wool, the market price declined so that as of December 31, 1937, the market value of the inventory of the goods then on hand was $33,904.95 less than cost. It reduced the book value of the inventory in its name at December 31, 1937, by this amount of $33,904.95 but did not deduct that amount in its income and excess profits tax return for that year. Esmond did not include the inventory of Smithfield as of December 31, 1937, as part of its own inventory but paid the amount of $33,904.95 to Smithfield and deducted this amount as a loss in its income and excess profits tax return for 1937. During the year 1937, Smithfield was under contracts to buy cotton and wool at prices higher than those existing in the market in that year. It obtained the cancellation of these contracts by a payment in 1937 of $31,636.19 to certain brokers, which amount Esmond advanced to Smithfield without reimbursement. Esmond deducted this amount in its income and excess profits tax return for 1937.

On June 30, 1940, The Esmond Mills, Inc. took over all the assets of Esmond and assumed all its liabilities. It admits that it is the transferee of Esmond and is liable for the payment of any deficiencies which may be found due from Esmond for the years 1936 and 1937.

The Commissioner of Internal Revenue disallowed the deductions in the amounts of $33,904.95 and $31,636.19 paid to Smithfield on the ground that they were not losses sustained or ordinary and necessary expenses paid in the conduct of the business of Esmond.

■ The petitioners contended before the Board of Tax Appeals that Smithfield was merely an agent of Esmond and that, therefore, the losses sustained both in the inventory depreciation and cancellation of contracts were the losses of Esmond. The Board rejected this contention on the ground that petitioners failed to introduce sufficient evidence to establish an agency relationship. As the Board said: "The relationship of agency rests on a contract, express or implied, between the parties. Its characteristics are well known. It involves, inter alia, the power of the agent to bind his principal as to third persons; the existence of a fiduciary relationship between principal and agent; and the right of the principal to control the conduct of the agent with respect to matters entrusted to him. These are matters to be established by proof. The evidence establishes none of them". We agree with the conclusion reached by the Board.

■■ The Board held on the basis of the record that Esmond and Smithfield are separate entities for the purpose of taxation. We believe that there is sufficient evidence in the record to sustain the Board's conclusions. It is true, as the findings indicate, that Esmond owned all of the capital stock of Smithfield and that Smithfield's only activity was the purchase of cotton and wool for it. The courts, however, will not disregard corporate entities merely because of a parent-subsidiary relationship; Interstate Transit Lines v. Commissioner of Internal Revenue, 8 Cir., 1942, 130 F.2d 136; American Package Corporation v. Commissioner, 4 Cir., 1942, 125 F.2d 413, 140 A.L.R. 642; Walker v. Gulf & I. Railway Co. of Texas, 5 Cir., 1921, 269 F. 885; they will look behind the intercorporate set up only if there is evidence of a purpose to evade a statute or to practice fraud upon third persons. E. Albrecht & Son, Inc., v. Landy, 8 Cir., 1940, 114 F.2d 202; Stone v. Eacho, 4 Cir., 1942, 127 F.2d 284.

■ The record shows that Smithfield made purchases of cotton and wool in its own name and retained title until it trans-

ferred the same to Esmond. It carried its inventory on its own books; it made contracts with third persons in its own name; it filed an income tax return in the year in question and reported commissions from Esmond as income, and the balance sheet included within its return lists as inventory the wool and cotton which it held in its own name. All of these facts show that the petitioners were of the opinion, and apparently good business sense dictated, that the two corporations should preserve their separate identities. In Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 358, 84 L.Ed. 406, the court said: "A taxpayer is free to adopt such organizations for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantage."

In Interstate Transit Lines v. Commissioner, supra, the Interstate Transit Lines claimed a deduction as a loss sustained by its wholly owned subsidiary, Union Pacific Stages of California, and absorbed by it. Petitioner created its subsidiary because it could not under state law operate intrastate lines in California. Petitioner and its subsidiary entered into an absorption and operating contract in which it was agreed that the subsidiary was to be maintained solely for the benefit of the petitioner, and provided further, that the subsidiary was to operate busses upon such roads and schedules and under such rules and regulations as might be directed by the petitioner. There also was argument was advanced that the subsidiary was but an instrumentality or alter ego of the petitioner and that, therefore, the corporate entity of the subsidiary should be disregarded for tax purposes. The court rejected this contention, and held that the "corporate entity of the subsidiary cannot be disregarded, nor the 'tax disadvantage' resulting from its organization avoided". (page 140 of 130 F.2d). In that case there was a considerable amount of parental control and, as already noted, it was expressly agreed by the parties that the subsidiary was created for the exclusive benefit of the parent corporation. That decision is authority for the proposition that separate corporate entities will not be disregarded in tax cases merely because the parent owns all of the capital stock of the subsidiary and exercises considerable control over its internal affairs. We are in accord with the holding in that case and are of the opinion that the facts before us present the same issue which was there raised.

The petitioners contend that even if we hold Esmond and Smithfield to be separate entities, nevertheless, the sums advanced by Esmond to Smithfield are deductible from Esmond's gross income either as ordinary and necessary business expenses within the meaning of Section 23 (a) [1] of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Code § 23(a), or as uncompensated losses within the meaning of Section 23(f) [2]. We find no merit in either contention. Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, and Kornhauser v. United States, 1928, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505, cited by petitioners are not in point. These cases merely throw some light on what are ordinary and necessary business expenses within the meaning of Section 23(a) and they in no way support petitioners' position. We may assume that the sums paid for the cancellation of Smithfield's contract and the losses resulting from the shrinkage in its inventory were deductible from Smithfield's gross income. While Smithfield filed an income tax return, it did not see fit to deduct these sums. What the petitioners must prove, therefore, is that the sums advanced by Esmond were its ordinary and necessary business expenses. This they have failed to do. Basic to the whole question is our holding that for tax purposes these two corporations are separate entities. The expenditures of Esmond, single controlling stock-

[1] "§ 23. Deductions from gross income "In computing net income there shall be allowed as deductions:
"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * * "

[2] "(f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

holder, were either loans or capital contributions to Smithfield but they were not its ordinary and necessary business expenses. Interstate Transit Lines v. Commissioner, supra; Walker v. Gulf & I. Railway Co. of Texas, supra. See W. F. Young, Inc. v. Commissioner, 1 Cir., 1941, 120 F.2d 159.

██ ██ Nor may the sums advanced by Esmond be deducted as its losses. The statute provides for a deduction for losses sustained. We agree with the respondent that to be deductible the losses must be those of the taxpayer sustaining them. See New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Watson v. Commissioner, 2 Cir., 1942, 124 F.2d 437. In a sense any business misfortune which befalls Smithfield results in a loss to Esmond but a subsidiary may not shift its losses for tax purposes to the parent corporation.

The decision of the Board of Tax Appeals is affirmed.